THE STATE OF OHIO, APPELLEE, *v.* SHEPARD, APPELLANT.

(No. WD-83-76—Decided April 6, 1984.)

*Ms. Betty D. Montgomery,* prosecuting attorney, for appellee.
*Ms. Carol J. King,* for appellant.

*Per Curiam.* This case is before the court on an appeal from a judgment of the Wood County Court of Common Pleas, which ordered that Linda Kay Shepard, appellant herein, be recommitted to a maximum security facility at the Central Ohio Psychiatry Hospital ("COPH").

The pertinent facts can be summarized briefly. In May 1978, appellant stood trial for murder and attempted murder. The jury found her not guilty of both charges by reason of insanity. Appellant was thereafter committed to Lima State Hospital. In August 1981, she was transferred to a maximum security area, known as the Timothy B. Moritz Forensic Unit, at COPH. From the period following her acquittal until at least May 1983, several commitment hearings were held to determine whether to continue appellant's confinement in the maximum security facility. At each hearing, the court ultimately ruled that appellant should be recommitted to maximum security confinement.

In June 1983, hospital officials at COPH recommended that appellant be transferred to a less restrictive civil mental hospital. Hearings were held in July and September 1983. The parties stipulated that appellant met the criteria set forth in R.C. 5122.01(A), (B)(1) and (B)(3) for continued hospitalization. Therefore, the only issue at these hearings was whether appellant should be transferred to a less restrictive environment. The Ohio Department of Mental Health had agreed that appellant should be transferred to the less restrictive "medium-security" hospital. At the hearings, the prosecution argued for appellant's recommitment to COPH. Three psychiatrists testified at the various hearings regarding appellant's current mental condition, the kind of treatment she needs and the type of controlled environment appropriate to her condition. In addition to their testimony, Dr. Mijo Zakman submitted his findings in a report which, by the parties' stipulation, was received in evidence as though he had testified. The trial court ultimately ruled that appellant's mental condition had not changed since the last commitment proceedings, and that appellant continues to be a danger to herself and others. Consequently, on September 30, 1983, the court ordered that appellant be recommitted to maximum security confinement at COPH. This appeal followed.

In bringing this appeal, appellant presents a single assignment of error for review:

"The trial court erred to the prejudice of the appellant in denying the department of mental health's request to transfer her from a maximum security facility to a less restrictive hospital setting."

R.C. 2945.40 states, in relevant part:

"(B) Upon completion of the hearing [to determine if the acquittee is a mentally ill person subject to court-ordered hospitalization under R.C. 5122.01], if the court finds there is not clear and convincing evidence that the person is a mentally ill * * * person subject to hospitalization * * * by court order, the court shall immediately discharge the person[.]

"(C) If the court finds by *clear and convincing* evidence that the person is a mentally ill * * * person subject to hospitalization * * * by court order, it shall make a commitment authorized by divisions (C) to (E) of section 5122.15 * * * of the Revised Code, and shall send to the place of commitment all reports of the person's mental condition at the time

of the offense and at the time of commitment that were prepared pursuant to section 2945.39 or Chapter 5122 of the Revised Code[.]

"(D)(1) In deciding the nature of commitment pursuant to division (C) of this section, *the court shall order the implementation of the least restrictive commitment alternative available* consistent with the public safety and the welfare of the person. * * *" (Emphasis added.)

R.C. 5122.01 provides, in pertinent part:

"(A) 'Mental illness' means a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life.

"(B) 'Mentally ill person subject to hospitalization by court order' means a mentally ill person who, because of his illness:

"(1) Represents a substantial risk of physical harm to himself as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;

"(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;

"(3) Represents a substantial and immediate risk of serious physical impairment or injury to himself as manifested by evidence that he is unable to provide for and is not providing for his basic physical needs because of his mental illness and that appropriate provision for such needs cannot be made immediately available in the community; or

"(4) Would benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself."

R.C. 5122.15 also states, in part:

"(C) If, upon completion of the hearing the court finds *clear and convincing evidence* that the respondent is a mentally ill person subject to hospitalization by court order, the court shall order the respondent, for a period not to exceed ninety days to:

"(1) A hospital operated by the department of mental health;

"(2) A nonpublic hospital;

"* * *

"(4) A community mental health clinical facility;

"* * *

"(6) Any other suitable facility or person consistent with the diagnosis, prognosis, and treatment needs of the respondent[.] * * *

"* * *

"(E) In determining the place to which, or the person with whom, the respondent is to be committed, *the court shall* consider the diagnosis, prognosis, and projected treatment plan for the respondent and *order the implementation of the least restrictive alternative available and consistent with treatment goals and, in the case of a person found not guilty by reason of insanity, with public safety.*" (Emphasis added.)

An issue has been raised in this case regarding the appropriate standard or burden of proof that the state's case is required to meet to justify appellant's continued commitment to and confinement in the more restrictive alternative (here, a maximum security facility at COPH) when multiple placements are otherwise available. The proper burden of proof for determining whether the facts warrant appellant's recommitment to and continued confinement in the maximum security facility, as opposed to some other less restrictive environment, is the *same* "clear and convincing" standard that the state's case had to overcome to justify appellant's original commitment as an in-

sanity acquittee under R.C. 2945.40(C), *supra, i.e.,* to justify the finding that appellant was (and is) a "mentally ill person subject to hospitalization by court order."

In *State* v. *Jackson* (1981), 2 Ohio App. 3d 11, 13, the Tenth Appellate District held that, in a recommitment hearing, R.C. 2945.40(D)(1) imposes only a preponderance-of-the-evidence standard in determining which commitment alternative is appropriately the least restrictive one consistent with public safety and the acquittee's welfare. In this case, the prosecution has argued that the preponderance standard should control for all recommitment hearings, even when the issue is *not* whether the person should be discharged, but only whether the person's confinement should be changed from maximum security to medium security. We disagree. The *Jackson* holding incorrectly lessens the burden that the state must meet to show that recommitment to the more restrictive setting is justified. Stated differently, in determining which recommitment alternative is the least restrictive one consistent with public safety and the insanity acquittee's welfare, the court is *required,* automatically, to implement placement in the least restrictive setting, unless the prosecution first establishes by clear and convincing evidence that public safety would be impaired or that the patient's welfare (or that of others) would be jeopardized by confinement in the less restrictive environment.

The requirement of clear and convincing evidence is more consonant with due process of law under the Fourteenth Amendment and with the patient's right not to be deprived of her liberty through errors or ambiguities in the fact-finding process than is the preponderance standard in ordinary civil cases. See *Addington* v. *Texas* (1979), 441 U.S. 418, 425-433. Consequently, the clear and convincing standard must be satisfied in all subsequent recommitment hearings, even when the only issue consists in ascertain-

ing which controlled environment, among the available alternatives, is most appropriate to the patient's mental health, her physical well-being and treatment needs, and the obvious imperatives of public safety. Cf. R.C. 5122.15(E).

Having reviewed the record *sub judice,* including the testimony of Drs. Lindner, Davis and Sherman, and the findings of Dr. Zakman, as well as the trial court's written opinion herein, we conclude that the court, at *this* recommitment proceeding, correctly assessed the evidence in light of the clear and convincing burden of proof that the state had to carry to justify appellant's continued commitment in the maximum security section of COPH. While the weight to be given the evidence, the conflicts in the witnesses' testimony, and the overall assessment of psychiatric opinion testimony are all matters for the trial court to resolve, having reviewed the same, we cannot say that the trial court's findings and its order to recommit appellant to COPH are erroneous.

Appellant's subsidiary contention is that the term "recent," as used in the definition section of R.C. 5122.01(B)(2), *supra,* requires that any hearings held to determine whether a less restrictive placement is warranted be limited to the submission and review of the state's evidence of the patient's behavior in the *immediate* past. Appellant argues that the prosecution should not be permitted to "boot strap" its case against less restrictive commitment by referring to or bringing in evidence from previous commitment hearings. Appellant thus maintains that "recent behavior" means evidence of the patient's behavior *only since the last hearing.*

However, a careful reading of R.C. 5122.01(B), in context, belies any such "tunnel vision" approach. R.C. 5122.01 (B) defines a "[m]entally ill person subject to hospitalization by court order" by means of four categories of adverse consequences that a person's mental illness is

likely to engender. The term "recent" is used in only one of these four categories. See R.C. 5122.01(B)(2). We agree that the state's case at these recommitment hearings should not be merely a regurgitation of testimony or other evidence from past hearings, and we disapprove of any such "boot strapping" tactics. Yet, we do not agree that "recent behavior" means only such behavior as the patient may have exhibited since the last commitment hearing. This construction would be much too narrow.

Suffice it to say that what is or is not "recent behavior" is to be determined by the trial court on a case-by-case basis, and any such determination will certainly have to include not only the fact of *when* the behavior occurred, but also an assessment of the substantiality of the patient's behavior in relation to the risk of physical harm to himself or others. In this case, the evidence that appellant had attempted to cut her wrists with glass and plastic spoons, because "voices" prompted her to do so, was sufficiently recent to constitute relevant, probative evidence of the risk of physical harm that appellant's schizophrenic disorder poses to herself and others.

Accordingly, appellant's sole assignment of error is not well-taken.

On consideration whereof, the judgment of the Wood County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

CONNORS, P.J., HANDWORK and RESNICK, JJ., concur.