THE STATE OF OHIO, APPELLEE, *v.* BRUTON, APPELLANT.

(No. 49520—Decided September 30, 1985.)

*John T. Corrigan,* prosecuting attorney, and *Robert Marek,* for appellee.

*Thomas R. Wetterer, Jr.,* for appellant.

ANN MCMANAMON, J. Appellant James Bruton appeals a judgment of the court of common pleas recommitting him to Dayton Forensic Center ("Dayton"), a maximum security mental hospital.

In July 1979, Bruton was found not guilty of felonious assault by reason of insanity and was committed to Lima State Hospital. In December 1981, he was transferred to Dayton. Since his acquittal, numerous commitment hearings have been held to determine whether he should be transferred from a maximum security mental hospital to a less restrictive setting. The court has consistently ruled that Bruton should be recommitted to Dayton.

On July 27, 1984, the Dayton staff notified the court that Bruton's condition had improved, and recommended that he be transferred to a less restrictive facility pursuant to R.C. 2945.40(C) and (D). Appellant was transferred to the Cuyahoga County Justice Center on September 6, 1984, where he awaited hearing on the matter. The court ordered examination by a psychiatrist on September 21, 1984. Bruton was examined by Dr. Cupala on October 3 and 9, respectively.

A written report, dated October 3, was prepared and a hearing followed on

October 31, 1984. Appellant was declared indigent, and the court appointed counsel to represent him. His motion to substitute appointed counsel of his choice was denied.

Counsel stipulated to the admission into evidence of status reports issued by Dr. Veveris and Dr. Samy, staff psychiatrists at Dayton; two letters written on behalf of the Dayton staff recommending that appellant no longer required maximum security confinement; and the October 3, 1984 report of Dr. Cupala. The only oral testimony at the hearing was offered by Dr. Cupala.

At the conclusion of the hearing, the trial judge found by clear and convincing evidence that appellant was mentally ill and subject to hospitalization; that he represented a substantial risk of physical harm to others, and that his dangerous propensities necessitated maximum security confinement. The court ordered that appellant be recommitted to Dayton. From this order, appellant appeals, citing four assignments of error.[1]

In his first assignment of error, Bruton argues that the trial court erred in not granting his request to be represented by counsel of his choice. It is appellant's position that the right to counsel of choice is statutorily mandated for persons subject to involuntary hospitalization pursuant to R.C. 5122.15, as well as for not-guilty-by-reason-of-insanity ("NGRI") acquittees pursuant to R.C. 2945.40(I), whether they are indigent or not.

R.C. 5122.15(A) provides in pertinent part:

"(2) The respondent has the right to attend the hearing and to be represented by counsel of his choice.

"(3) If the respondent is not represented by counsel, is absent from the hearing, and has not validly waived the right to counsel, the court shall appoint counsel immediately to represent him at the hearing, reserving the right to tax costs of appointed counsel to the respondent, unless it is shown that he is indigent. If the court appoints counsel, or if the court determines that the evidence relevant to the respondent's absence does not justify the absence, the court shall continue the case.

"(4) The respondent shall be informed that he may retain counsel and have independent expert evaluation. If he is unable to obtain an attorney, he shall be represented by court-appointed counsel. If the respondent is indigent, court-appointed counsel and independent expert evaluation shall be provided as an expense under section 5122.43 of the Revised Code."

When the above subsections are read *in pari materia,* it is clear that a person involuntarily committed may choose his own attorney pursuant to subsection (2) only when the person is financially able to do so. Subsection (4) clearly provides that where a respondent is indigent, "court-appointed counsel * * * shall be provided."

Similarly, the language of R.C. 2945.40 indicates that the insanity-

---

[1] The assignments of error are as follows:

"I

"The trial court erred in not granting appellant's request to be represented by counsel of his choice at public expense.

"II

"The trial court failed to conduct a hearing within thirty days of the request for a hearing as required by R.C. 2945.40(F).

"III

"The appellant was denied effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Section[s] 10 and 16 of Article I of the Ohio Constitution.

"IV

"The state failed to prove by clear and convincing evidence that Dayton Mental Health Center's maximum security unit was the least restrictive alternative of commitment for appellant."

defense acquittee is permitted to retain counsel of his or her choice only when the person can financially afford the same. R.C. 2945.40(I) provides:

"In all hearings pursuant to this section, the person found not guilty by reason of insanity may retain counsel of his choice. If the person is indigent, the court shall appoint a public defender or other counsel to provide legal representation to such persons."

The statute does not contemplate that an indigent acquittee may exercise any choice in the court's appointment of counsel. The legislature included the word "choice" only in the first sentence of the subsection concerning retained counsel. Had the legislature intended to allow an indigent acquittee to choose the attorney that the court must appoint, the word "choice" would have been included in the second sentence as well.

We conclude that the provisions of R.C. 5122.15(A), when read together and in light of R.C. 2945.40(I), do not entitle an indigent person to court-appointed counsel of his choice.

See, also, *Thurston* v. *Maxwell* (1965), 3 Ohio St. 2d 92, 93 [32 O.O.2d 63]:

"The right of an accused to select his own counsel is inherent only in those cases wherein such accused is employing the counsel himself. The right to have counsel assigned by the court does not impose a duty on the court to allow the accused to choose his own counsel; the selection is within the discretion of the court. * * * "

This assignment of error is without merit.

In his second assignment of error, appellant argues that the trial court failed to conduct a hearing within thirty days of the request for a hearing as required by R.C. 2945.40(F). We note that counsel for appellant failed to raise this objection below, and therefore we are not required to consider it on appeal unless manifest injustice results. *State* v. *Williams* (1977), 51 Ohio St. 2d 112 [5 O.O. 3d 98].

R.C. 2945.40(F) provides in pertinent part:

" * * * If the trial court or prosecutor does request a hearing within the fifteen-day period, the trial court shall hold a full hearing on the person's commitment not more than thirty days after the hearing is requested * * *."

It is undisputed that appellant was not afforded a timely hearing. Both appellant and appellee Ohio Department of Mental Health argue that a timely hearing was necessary to protect against a deterioration of appellant's mental condition while in the county jail setting, and to ensure that he received treatment which provided him with a reasonable opportunity to be rehabilitated. Appellant asserts that he was prejudiced by the delay since the jail setting, which by its very nature damages a person's mental condition, caused him to "decompensate," which, in turn, caused Dr. Cupala to change his opinion as to the hospital's recommended status change.

This court will not speculate as to the possible effects of Bruton's confinement in the Cuyahoga County Justice Center. The record demonstrates that Bruton spent fifty-five days in the center before his hearing and that he was in that facility for fifteen days before a psychiatric examination was ordered by the court. The court psychiatrist testified that Bruton's condition "decompensated" after October 9, *i.e.*, thirty-three days after his detainment in the center. Whether this deterioration was fostered by the atmosphere of the Justice Center, by Bruton's refusal to take his medication, or by reason of his general mental instability, we do not know.

Although we recognize that the time strictures of the statute were not complied with by the court, we are unable to conclude that Bruton's mental condition or his legal rights were substantially impaired by the systemic delay which occurred.

Bruton was accorded a full hearing

by the court and we are unable to determine from the record that had the hearing been held within the statutory time limit, that the court's ruling would have been otherwise.

This assignment is overruled.

In his third assignment of error, appellant argues that court-appointed counsel rendered him ineffective assistance. Specifically, appellant asserts that counsel failed to protect his statutory right to a timely hearing pursuant to R.C. 2945.40(F), and further failed to object to testimony based on inadmissible hearsay.

The right to counsel has been statutorily mandated in civil commitment cases. As in the criminal context, a person subject to involuntary commitment may be deprived of his liberty. We therefore deem the standards for determining effectiveness of counsel in the criminal context to be applicable in this case.

In formulating a test for effective counsel, the Supreme Court in *State* v. *Hester* (1976), 45 Ohio St. 2d 71, 79 [74 O.O. 2d 156], held that the proper inquiry is " * * * whether the accused, under all the circumstances, including the fact that he had retained counsel, had a fair trial and substantial justice was done."

In making this analysis, the Supreme Court has set forth a two-step process:

" * * * First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 396-397 [2 O.O. 3d 495].

The United States Supreme Court has recently amplified the *Lytle* standard in *Strickland* v. *Washington* (1984), 466 U.S. 668, in which it was held at 688:

" * * * The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."

The court further noted at 689:

" * * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *."

Appellant initially argues that he was prejudiced when counsel made no objection to the court's failure to hold a timely hearing pursuant to R.C. 2945.40(F). We have addressed this argument in our discussion of the second citation of error, and have concluded that appellant has demonstrated no prejudice by reason of delay. We therefore hold that counsel's assistance was not rendered ineffective by failure to raise this objection.

Pursuant to Evid. R. 703, facts or data upon which an expert bases an opinion must be those perceived by him or admitted in evidence at the hearing. *State* v. *Jones* (1984), 9 Ohio St. 3d 123.

At the hearing on appellant's continued commitment, Dr. Cupala testified on direct examination as follows:

"There are notes made in the nursing notes that he is delusional and he has been very hostile at times, pacing up and down. He made several threats to the nursing staff, stating that he knows where they were and that he will kill them, and on the basis of the new information that I received, and on the basis of the fact he is not taking his medication, and most probably that he has delusion due to fact not on medication since

his time release from Dayton — prior to release from Dayton, and when he stopped taking his medication, I believe that Mr. Bruton's condition has deteriorated, and I would like to change my opinion, my original opinion dated October 3rd, that he would not be a candidate for the civil hospital at Western Reserve."

Dr. Cupala's testimony that his change of opinion was based in part on nurses' notes and reports was inadmissible hearsay which appears on the record without objection from appellant's counsel. Bruton argues that he was prejudiced by this testimony since it was the only unfavorable evidence against a change of hospital setting.

We find that counsel's failure to object in this instance does not render his assistance ineffective. Perfect legal representation is not required. The proper test is reasonableness.

Counsel demonstrated that there were weaknesses in Dr. Cupala's testimony and chose to test them on cross-examination. Counsel challenged the reliability of the evidence, sought to undermine its weight, and aggressively pursued the reason for the expert's change of opinion:

"Q. I understand that [appellant's condition deteriorated] Doctor, but your information does not come — your information after October 9th does not come from a trained psychiatrist; does it?

"A. It does not come from trained psychiatrist. You are right."

Further cross-examination was extensive.

We find that counsel's strategy made the adversarial testing process work, and that his performance fell within the wide range of professional competence. Any deficiency in his performance did not deprive appellant of the right to a fair hearing.

Appellant's third assignment of error is without merit.

In his final assignment of error, appellant contends that the state failed to prove by clear and convincing evidence that Dayton's maximum security unit was the least restrictive commitment alternative.

R.C. 2945.40 provides in pertinent part:

"(C) If the court finds by clear and convincing evidence that the person is a mentally ill * * * person subject to hospitalization * * * by court order, it shall make a commitment authorized by divisions (C) to (E) of section 5122.15 * * * of the Revised Code * * *.

"(D)(1) In deciding the nature of commitment pursuant to division (C) of this section, the court shall order the implementation of the least restrictive commitment alternative available consistent with the public safety and the welfare of the person. * * *"

It is undisputed that the state must prove by clear and convincing evidence that an NGRI acquittee is "mentally ill" as defined by R.C. 5122.01(A) and (B)[2] in order to justify court-ordered commitment.

---

[2] R.C. 5122.01 provides in pertinent part:

"As used in Chapter 5122. of the Revised Code:

"(A) 'Mental illness' means a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life.

"(B) 'Mentally ill person subject to hospitalization by court order' means a mentally ill person who, because of his illness:

"(1) Represents a substantial risk of physical harm to himself as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;

"(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that

R.C. 5122.15 further provides in pertinent part:

"(C) If, upon completion of the hearing the court finds clear and convincing evidence that the respondent is a mentally ill person subject to hospitalization by court order, the court shall order the respondent, for a period not to exceed ninety days to:

"(1) A hospital operated by the department of mental health;

"(2) A nonpublic hospital;

"(3) The veterans' administration or other agency of the United States government;

"(4) A community mental health clinical facility;

"(5) Receive private psychiatric or psychological care and treatment;

"(6) Any other suitable facility or person consistent with the diagnosis, prognosis, and treatment needs of the respondent; or

"(7) An inpatient unit administered by a community mental health center licensed by the division of mental health of the department of mental health and mental retardation under section 5123.16 of the Revised Code.

" * * *

"(E) In determining the place to which, or the person with whom, the respondent is to be committed, the court shall consider the diagnosis, prognosis, and projected treatment plan for the respondent and order the implementation of the least restrictive alternative available and consistent with treatment goals and, in the case of a person found not guilty by reason of insanity, with public safety."

Appellant contends that, in order to justify his continued commitment at Dayton, the state is required to prove by clear and convincing evidence that Dayton is the least restrictive alternative available consistent with the public safety and the acquittee's welfare. We agree. We see no reason why the standard of proof that the state must overcome to justify appellant's original commitment as an insanity acquittee under R.C. 2945.40(C) should be any different from that used to justify appellant's recommitment to a more restrictive setting.

We find that the better-reasoned decisions support this interpretation. In *State* v. *Shepard* (1984), 13 Ohio App. 3d 389, 392, the Court of Appeals for Wood County stated:

"The requirement of clear and convincing evidence is more consonant with due process of law under the Fourteenth Amendment and with the patient's right not to be deprived of her liberty through errors or ambiguities in the fact-finding process than is the preponderance standard in ordinary civil cases. See *Addington* v. *Texas* (1979), 441 U.S. 418, 425-433. Consequently, the clear and convincing standard must be satisfied in all subsequent recommitment hearings, even when the only issue consists in ascertaining which controlled environment, among the available alternatives, is most appropriate to the patient's mental health, her physical well-being and treatment needs, and the obvious imperatives of public safety. Cf. R.C. 5122.15(E)."

The record demonstrates that the

---

place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;

"(3) Represents a substantial and immediate risk of serious physical impairment or injury to himself as manifested by evidence that he is unable to provide for and is not providing for his basic physical needs because of his mental illness and that ap-

propriate provision for such needs cannot be made immediately available in the community; or

"(4) Would benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself."

trial court applied the proper standard of proof, and that its decision to continue appellant's commitment to Dayton was supported by clear and convincing evidence.

An insanity defense acquittee may be hospitalized in a maximum security facility when his or her recent and past history demonstrates a likelihood that the acquittee presents an immediate risk of harm to himself or others. *Daris* v. *Watkins* (N.D. Ohio 1974), 384 F. Supp. 1196. In *In re Burton* (1984), 11 Ohio St. 3d 147, 150, the Supreme Court stated that one factor to be considered by a court in determining the nature of commitment is the probability that a person whose mental illness is in a state of remission will continue the treatment necessary to maintain his remissive state.

The findings made by appellant's treating physicians reveal that he suffers from a chronic paranoid schizophrenic disorder. He shows frequent mood changes, has verbally threatened to kill hospital staff, believes he has contacts with the CIA, FBI, and other organizations, and has a low level of insight into his mental problems. Both Drs. Samy and Veveris found that appellant's condition had improved since his hospitalization at Dayton. They noted that he demonstrated self-control, needed no restraint or seclusion, and posed no actual physical danger to staff or fellow patients. They recommended that, as part of his continued treatment, he be transferred to a civil hospital for participation in a work rehabilitation program.

On the basis of the hospital reports and a personal interview with appellant, Dr. Cupala, in a report dated October 3, supported the hospital's recommendation. Dr. Cupala opined that, although appellant had taken no medication for several months, he showed no symptoms of psychosis, had gained insight into his problem, and exhibited remorse over the assault.

The medical testimony demonstrates that appellant is dependent upon prescribed anti-psychotic medication for his treatment. Although his behavior improves significantly when he takes these drugs, he becomes loud, angry, and verbally threatening when he discontinues their use. Occasionally, appellant refuses to take his drugs. He told doctors that he wants to prove to the court that he can function without medication.

Dr. Cupala testified at the hearing that his recommendation for appellant's transfer in the October 3 report was based partly on appellant's agreement to take his medication:

"Q. And there really wasn't any great change between the 3rd and the 9th?

"A. Well, there is a change because my recommendations were partly based on the fact that the defendant told me that he would take his medication, and in actuality, he never took them. That, to me, is a very serious thing, because I know the medication would keep him in remission, but at that time, on October 9th, he still did not manifest any violence or aggressive behavior, and he really did not indicate to me the reasons why he was not taking his medications."

The doctor told the court that he learned from the nursing staff at the county Justice Center that as a result of his refusal to take medication, appellant had become hostile and delusional and had threatened to kill them. Dr. Cupala stated that since appellant had deteriorated in this fashion he would not be a good candidate for rehabilitation.

Weighed against the evidence favorable to appellant's case is Bruton's medical history, which is replete with remission of psychotic behavior when he accepts his drugs followed by a recurrence of psychosis and dangerous behavior when he refuses them. In light of Bruton's refusal to take his medication, the court could reasonably find that

he will continue to pose a danger to himself and others.

We find that the trial court's order recommitting appellant to hospitalization in a maximum security hospital is supported by clear and convincing evidence.

This assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JACKSON, P.J., and NAHRA, J., concur.