STATE OF NEBRASKA, APPELLEE, V. DAVID N. MORRIS, APPELLANT.
518 N.W.2d 664

Filed June 7, 1994.    No. A-93-807.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

HANNON and MILLER-LERMAN, Judges, and WARREN, District Judge, Retired.

HANNON, Judge.

David N. Morris was acquitted of the crimes of first degree murder and the use of a deadly weapon to commit a felony because he was found to have been insane at the time of the killing. He was thereafter committed to the Lincoln Regional Center (Center) for treatment under Neb. Rev. Stat. §§ 29-3701 to 29-3706 (Reissue 1989). At an annual review under § 29-3703, the trial court did not grant Morris the increased freedom of movement requested by the Center's staff. Morris appeals, seeking to have the terms of his confinement made less restrictive as requested in the staff's annual report, on the basis that the State did not prove by clear and convincing evidence that the more restrictive confinement was necessary. We conclude that when the evidence shows an acquittee remains mentally ill, dangerous, and in need of confinement, the State

does not have the burden to prove by clear and convincing evidence that the conditions of the acquittee's confinement are the least restrictive necessary. We further conclude that the trial court has the discretion to restrict the confinement and that the trial court in this case did not abuse its discretion. Accordingly, we affirm.

## PROCEDURAL HISTORY

When the court acquitted Morris on April 20, 1990, it found that he was not responsible by reason of insanity when he killed a young man. At the time of the killing, Morris claimed that he was Jesus Christ and that the victim was " 'evil.' " The court also found that Morris was influenced by drugs, but that he had not voluntarily used drugs to such an extent that he temporarily lost all reason. The court held that medication was necessary to prevent Morris' delusional state at the time of trial. On August 8, 1990, the court held a hearing under § 29-3702 and found that there was clear and convincing evidence that Morris was mentally ill and dangerous to himself or others by reason of mental illness or defect. The court stated that Morris would be dangerous in the foreseeable future, as demonstrated by overt acts or threats.

The court ordered Morris committed to the Center for appropriate treatment. The court further found that the below-listed freedoms of movement outside a locked facility were consistent with the safety of the public and ordered that Morris' movements outside the locked security unit at the facility be limited to Center personnel taking Morris (1) from the Center for medical treatment under close supervision; (2) at the staff's discretion, onto the grounds of the Center in supervised groups; and (3) at the staff's discretion, off the grounds of the Center in supervised groups. The court granted the Center permission to give Morris medication as ordered by a physician.

On August 8, 1991, an annual hearing was held as required by § 29-3703. The findings and order at that time were the same as the previous order, except the court ordered that, at the discretion of the Center's staff, Morris could be allowed onto the Center's grounds unsupervised for brief periods. On August

10, 1992, a second annual hearing was held, and the court provided that Morris would be allowed onto the grounds under supervision. In the 1992 order, the court did not explain why permission for Morris to go on the grounds unsupervised was revoked. However, evidence in the record shows the revocation occurred because Morris had obtained and used marijuana while on the grounds unsupervised.

At a hearing conducted August 11, 1993, Morris, through counsel, requested that he be allowed some unsupervised freedoms on the Center's grounds for short periods of time, as well as home visits, described below. The court denied this request and issued the same order as had been issued the year before.

## EVIDENCE AT THE HEARING

The parties introduced all of the evidence by stipulation. The evidence consists of (1) an annual report, dated July 19, 1993, prepared by the Center pursuant to § 29-3703 and signed by Dr. Chin Chung, a psychiatrist with the Forensic Mental Health Service; (2) a letter from Dr. Chung to Judge Blue dated July 20, 1993; and (3) a staff meeting report, dated July 14, 1993, signed by Dr. Chung.

The annual report contained the following conclusions:

Statement of Dangerousness[:] Mr. Morris continues to be mentally ill and dangerous. He is mentally ill because of his diagnosis of Axis I - A) Schizophrenia, Paranoid Type, and B) Polysubstance Abuse. He is dangerous because of the original act which resulted in his current hospitalization; and because of his schizophrenic disorder, though under good control symptomatically, suggests fragility of ego functions, and would predictably exacerbate if treatment were withdrawn.

Least Restrictive Treatment Setting[:] At this time, the Forensic Mental Health Services of the Lincoln Regional Center-is currently the least restrictive treatment environment consistent with his treatment needs and the safety of the public.

The annual report then requests the court's permission to allow Morris certain freedoms of movement. These requests

can be summarized as follows: (1) continued permission to take Morris from the Center for medical treatment; (2) continued permission to give Morris medication; (3) continued permission to take Morris off the grounds of the Center for supervised therapeutic activities; (4) permission to allow Morris onto the grounds of the Center unsupervised for brief periods of time and to allow him to independently attend therapeutic treatment activities on the grounds, such as Alcoholics Anonymous meetings; (5) permission to allow Morris to leave the Center for 4- to 5-hour outings in the Lincoln-Lancaster County area with responsible family members or a volunteer approved by the treatment team; and (6) permission after 6 months to allow Morris to make home visits, if Morris demonstrates his ability to deal with the outings set forth above, and to increase these visits to overnight visits when warranted.

The report states the outings would be used in determining his readiness for overnight home visits and that the "treatment team feels this positive reinforcement would be of therapeutic value at this time in his treatment regime." The report also states the outings would be used in preparation for a request to begin reintegration into the community through the use of overnight visits.

In his letter to Judge Blue, Dr. Chung states in part:

Mr. Morris has made slow steady progress in treatment during the past year. Permission is sought from the court at this time to increase the level of freedom Mr. Morris is allowed, specifically reinstating the Code 4 status, which would allow Mr. Morris to be on the grounds of the Lincoln Regional Center, unsupervised, for limited periods of time. Such outings would be permitted behavior warranting in conjunction with his mental status at the time of the outing.

Handwritten notes of the proposed treatment goals for Morris are attached to the annual report. These notes are the delineation of goal assessments and target dates by which to achieve the goals and do not appear to be of significance in this appeal.

The staff report contains notes from a meeting of the multidisciplinary staff at the Center, dated July 14, 1993. The

participants at the meeting were the staff members who have been monitoring Morris' mental health and treatment during his confinement. In summary, the staff found that Morris acts in an appropriate fashion during supervised, off-grounds excursions and acts appropriately with staff and other patients. He does display somewhat aggressive behavior during basketball games, but checks this behavior when directed by the staff. Morris follows his medication schedule "faithfully" and realizes that the "medication does promote his stability." However, one of the nurses stated that he continues to question his diagnosis and the need for medication. Nonetheless, the general import of the notes indicates that Morris "demonstrates good behaviors with appropriate emotional expression."

Some of these documents refer to "Code 3 status" and "Code 4 status." The record does not contain a clear definition of these terms, and therefore they are used only in directly quoted material in this opinion and in stating the assignments of error. It appears, however, that if Morris has Code 3 status, he may go on the grounds only if supervised, whereas if he has Code 4 status, he may go on the grounds for short periods without supervision. From the record, we cannot determine if Code 4 status includes greater freedoms than indicated in this paragraph. Therefore, we avoid using the term.

Following the hearing, the trial court filed an order on August 25, 1993, stating that "there is clear and convincing evidence that David N. Morris is still dangerous to himself or others by reason of mental illness or defect, and will be dangerous in the foreseeable future. Therefore, David N. Morris shall remain committed to the Lincoln Regional Center for appropriate treatment." The order also stated that Morris' movements outside of the locked facility shall be limited and under the supervision of the Center's staff and in effect denied permission for the additional freedoms requested by the staff as outlined above.

## ASSIGNMENTS OF ERROR

Morris assigns the following errors: (1) The trial court erred in denying Morris a Code 4 status and home visits, (2) the court's order was contrary to and not supported by sufficient

evidence, (3) the court's order was contrary to law, and (4) the State failed to prove by clear and convincing evidence that Morris should be denied a Code 4 status and home visits. Thereafter, in his brief, Morris consolidates all four of the assignments into one principal argument. On the basis of his brief, we find the assignment of error to essentially be that the trial court erred in refusing permission to allow Morris to go upon the grounds unsupervised, to go off the premises supervised by a responsible family member or volunteer, or to have home visits, because such denial was contrary to or not supported by law or clear and convincing evidence.

## STANDARD OF REVIEW

An appellate court will not interfere with a final order of the district court in a mental health commitment proceeding unless, as a matter of law, the order is not supported by clear and convincing proof. *State v. Hayden*, 233 Neb. 211, 444 N.W.2d 317 (1989) (*Hayden I*); *State v. Steele*, 224 Neb. 476; 399 N.W.2d 267 (1987); *State v. Simants*, 213 Neb. 638, 330 N.W.2d 910 (1983); *State v. Mayfield*, 212 Neb. 724, 325 N.W.2d 162 (1982). This rule and the cases cited in support are concerned with a mental health commitment under § 29-3701 et seq. of an individual acquitted of a crime by reason of insanity. Section 29-3702 provides that the court must find the person to be a danger to himself or others by reason of mental illness by clear and convincing evidence.

## DISCUSSION

*Does the Clear and Convincing Standard Apply in Cases Where the Conditions of Confinement Are at Issue?*

In review hearings under § 29-3703, the State has the burden of proving by clear and convincing evidence that the individual remains dangerous to himself or others by reason of mental illness or defect and will be dangerous in the foreseeable future. *State v. Hayden*, 237 Neb. 286, 466 N.W.2d 66 (1991) (*Hayden II*); *Tulloch v. State*, 237 Neb. 138, 465 N.W.2d 448 (1991). In view of the parties' stipulation, the annual report presents clear, convincing, and undisputed evidence that Morris remains dangerous to himself and others and that he should remain confined at the Center. To this extent, the State has met

its burden of proof, and the trial court's order is clearly supported by the evidence. Morris does not contest this part of the order.

In the present case, we are solely concerned with whether the trial court may deny the requested freedoms of movement while Morris is lawfully confined. Morris' attorney maintains that under *Hayden II*, the order under § 29-3703 must be supported by clear and convincing evidence. We agree with that position. However, Morris' attorney asserts that the record must contain clear and convincing evidence to support a denial of the requested freedoms before the court may enter such an order. Specifically, Morris' argument is that the record must contain clear and convincing evidence that Morris cannot safely go upon the grounds unsupervised or have the outings and other freedoms requested, such as home visits, and that absent clear and convincing evidence, the court must grant permission for the requested privileges. The State does not dispute this argument, but maintains that the record contains clear and convincing evidence in support of the trial court's order restricting Morris' movements. We cannot agree with the position of either party.

The trial court found that there was clear and convincing evidence that Morris was dangerous to himself or others by reason of a mental illness or defect, but did not find that the State proved by clear and convincing evidence that the restrictions of confinement imposed by the court were the least restrictive necessary. We doubt if the record contains clear and convincing evidence that granting the requested additional privileges is inconsistent with the public safety. However, for the reasons stated below, we do not believe that the State has that burden of proof. In determining this issue, we consider Nebraska statutes, the pronouncements of the Nebraska Supreme Court relating to the subject, the holdings of the U.S. Supreme Court on the rights of insanity acquittees, and the holdings of courts from other states.

Section 29-3702 states, in significant part, the following:

> If the court determines that there is *clear and convincing evidence* that the person is dangerous to himself, herself, or others by reason of mental illness or defect, or will be so

dangerous in the foreseeable future, as demonstrated by an overt act or threat, the court shall commit the person for treatment to one of the regional centers or other appropriate facility. The court shall specify the conditions of confinement regarding the person's freedom of movement outside locked facilities at the place of confinement, including whether or not the facility may grant the person leave into the community for any period of time, however short. *The order of commitment specifying the conditions of confinement shall include a finding by the court that any freedom of movement accorded the person outside a locked facility is consistent with the safety of the public.*

(Emphasis supplied.)

We observe that the statute clearly requires clear and convincing evidence on the issue of whether the person is mentally ill and dangerous. The statute does not specify any burden of proof regarding the conditions of confinement, but clearly imposes on the court the burden to determine what freedom of movement outside the locked facility is consistent with the safety of the public. Further, the statute does not empower the staff at the facility where the insanity acquittee is confined to determine what is consistent with the safety concerns of the public.

Section 29-3703 provides that the court which found a person not responsible by reason of insanity must also hold annual hearings to review the matter. The part of § 29-3703 applicable in circumstances in which the trial court finds the person to remain dangerous provides: "[T]he court shall order such person returned to an appropriate facility under an appropriate treatment plan and conditions of confinement. *The court may place the person in a less restrictive setting only if it finds that such placement is consistent with the safety of the public.*" (Emphasis supplied.)

The Nebraska Supreme Court has commented upon the interrelationship of §§ 29-3701 and 29-3703:

It should be noted that the drafters of § 29-3703 chose not to include the same specifically enumerated and detailed requirements for submitting reports to the court

as are mandated by § 29-3701. . . . The statute does not specify what those "records" consist of, and it does not require that the court be furnished with any evidence prior to the hearing. Therefore, we find that the State and the district court erred in believing that the specific provisions of § 29-3701 are somehow grafted onto the phrase "the records" in § 29-3703.

*Hayden II*, 237 Neb. at 292, 466 N.W.2d at 69.

However, it should be noted that in the very next paragraph the court referred to *Tulloch v. State*, 237 Neb. 138, 143, 465 N.W.2d 448, 452 (1991), wherein it held that the confined person is entitled to "a full panoply of constitutional rights for the individual throughout the various hearings."

In *Addington v. Texas*, 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979), the U.S. Supreme Court held that in a civil commitment proceeding for the involuntary commitment of an individual, the government must prove by clear and convincing evidence that the individual is mentally ill and dangerous. In *Jones v. United States*, 463 U.S. 354, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983), the Court held that insanity acquittees are a special class, distinguishable from committed persons like those in *Addington*, and are to be treated differently from other candidates for commitment. The *Jones* Court held that "the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." 463 U.S. at 370. Later, in *Foucha v. Louisiana*, _____ U.S. _____, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992), it was held that "the State must establish insanity and dangerousness by clear and convincing evidence in order to confine an insane convict beyond his criminal sentence, when the basis for his original confinement no longer exists." 112 S. Ct. at 1788. In *Foucha*, Louisiana did not claim the acquittee remained insane, but only that he remained dangerous. The Supreme Court stated that on this issue the state had the same burden as it had for the commitment of insane persons who have not committed a crime. These cases deal only with the burden of proof required for committing or maintaining commitment of an insane person, not the terms or conditions of

that commitment. The distinctions between civilly committed persons and acquittees were acknowledged to a degree by the Nebraska Supreme Court in *Tulloch v. State, supra*. The cases in which the U.S. Supreme Court has considered the rights of persons confined because of insanity give no indication that an insanity acquittee who is rightfully confined is constitutionally entitled to have the state prove the restrictions of that confinement are necessary by clear and convincing evidence.

The issue presented in this case has been addressed by the courts in the State of Ohio. In *State v. Shepard*, 13 Ohio App. 3d 389, 469 N.E.2d 1040 (1984), health officials recommended that an acquittee should be transferred to a less restrictive mental hospital. After a hearing, the trial court denied the recommendation. The Ohio Court of Appeals held that the clear and convincing standard applied to hearings for the determination of confinement of an insanity acquittee, "even when the only issue consists in ascertaining which controlled environment, among the available alternatives, is most appropriate to the patient's mental health." *Id*. at 392, 469 N.E.2d at 1044. In *State v. Bruton*, 27 Ohio App. 3d 362, 501 N.E.2d 651 (1985), the clear and convincing standard was applied by the trial court when it refused a less restrictive environment, and the appellate court affirmed the judgment. In *State v. Lake*, 33 Ohio App. 3d 275, 515 N.E.2d 960 (1986), the same court held that the least restrictive alternative requirement applied only to transfers between facilities and not between wards of the same facility.

With the conflicting holdings of its Court of Appeals, the Supreme Court of Ohio considered the clear and convincing evidence standard again in *State v. Johnson*, 32 Ohio St. 3d 109, 512 N.E.2d 652 (1987). After recognizing that the clear and convincing standard of proof is mandated in both the initial determination of commitment and any determination that the commitment should be continued, the court held that when the sole question is whether the appellant should be transferred from one facility to a less restrictive one, "any determination made by the trial court in such cases will not be disturbed absent a showing of abuse of discretion." *Id*. at 113, 512 N.E.2d at 656. In *Johnson*, the Ohio court discussed the fact that the choice

was between two confinement settings, not between confinement and the lack of it. The court also noted that the Ohio statute, like the Nebraska statute in this case, did not impose the burden of proof on that issue on either party and that in *Addington* and *Jones*, the U.S. Supreme Court recognized different standards of proof for insanity acquittees than for civil committees.

In *State v. Traywick*, 72 Ohio App. 3d 674, 595 N.E.2d 986 (1991), the trial court refused to order a conditional release of the acquittee to a residential facility as recommended by the staff of the institution where the acquittee was confined. This ruling was affirmed by the Ohio Court of Appeals on the basis of *Johnson*. The Ohio courts were concerned with confinement in a less restrictive environment, rather than with greater or lesser restrictions while being confined to the same hospital. We believe the same principle should apply to the grant or denial of greater freedoms of an acquittee who remains in the same facility as would apply to a transfer to a less restrictive institution. Therefore, we conclude that the rule should be that when an insanity acquittee is subject to confinement in a particular institution, neither party has the burden of proof on the question of the restrictions of that confinement. Rather, the trial court shall have the discretion to provide the conditions of that confinement, and its order on that subject will not be changed in the absence of an abuse of discretion.

The Illinois Appellate Court came to a different conclusion than the Ohio courts. In *People v. Reed*, 126 Ill. App. 3d 1020, 467 N.E.2d 1158 (1984), the appellate court held that when the director of the institution recommended nonsecure, off-grounds privileges as part of the treatment of an acquittee, the state had the burden to prove by clear and convincing evidence that the privileges were not appropriate. The decision, however, was based upon the application of an amended Illinois statute which attached importance to the recommendation of the facility's director. The court noted that the rule would be otherwise if the proceedings were initiated by the defendant. Unlike Illinois statutes, Nebraska statutes do not provide any special treatment for recommendations or requests of the staff of the institution where the acquittee is confined.

■ We believe that the rationale in *Johnson* is sound and is in accordance with our statutes and the pronouncements of the Nebraska Supreme Court. The rule is particularly in line with the statutory order that "[t]he court may place the person in a less restrictive setting only if it finds that such placement is consistent with the safety of the public." § 29-3703. We therefore conclude that in a proceeding where the person who has been acquitted of a crime by reason of insanity seeks greater freedom of movement while institutionalized, neither the State nor the acquitted person has the burden of proof, and the trial court's decision to grant or deny greater freedoms will not be disturbed on appeal in the absence of an abuse of discretion.

*Was There an Abuse of Discretion by the Trial Court?*

■ The Center's staff requests that Morris be allowed to go on home visits in approximately 6 months, after he demonstrates responsibility to deal with the outings requested and discussed below. In effect, this request asks the court to grant the Center's staff the discretionary authority which §§ 29-3702 and 29-3703 confer upon the court. "In determining whether a person is dangerous, the focus must be on the subject's condition at the time of the hearing." *In re Interest of Blythman*, 208 Neb. 51, 57-58, 302 N.W.2d 666, 671 (1981). For the court to grant the Center authority to make Morris' confinement less restrictive at some future time would be for the court to assign its responsibilities to the Center. Perhaps a court may grant the Center the power to grant freedoms in the future upon the occurrence of a certain event. We are not considering that question. In this case, the court refused to grant such authority. It is clearly not an abuse of discretion for the court to refuse to grant freedoms in the future, particularly when the actual privileges are to be implemented only if the acquittee's conduct measures up to a standard set by someone other than the court. This point would be true even if the State had the burden of proof on the issue of conditions of confinement, because the possible future freedoms do not relate to Morris' mental condition at the time of the hearing.

The Center requested permission to allow Morris out onto the grounds of the Center unsupervised for brief periods of

time. It also requested permission to allow Morris to leave the Center on outings into the Lincoln-Lancaster County area for periods of up to 4 or 5 hours, accompanied by a responsible family member or volunteer. Such requests must be viewed in light of the circumstances at the time of the hearing. The question then becomes this: Did the trial court abuse its discretion in refusing to allow these privileges?

The evidence reveals that (1) Morris killed a person approximately 5 years ago while insane; (2) in the opinion of the mental health professionals in charge of Morris, he remains mentally ill and dangerous; (3) in the opinion of the same experts, the least restrictive treatment environment is the Forensic Mental Health Service at the Center; (4) there is no expert opinion in the record showing that allowing Morris the requested additional freedoms is not a significant danger to the public; and (5) there is no expert opinion that if Morris is unsupervised, he will not again attempt to obtain and use drugs as he did when he was previously granted certain unsupervised freedoms.

The State cites an observation by a staff nurse that Morris "continues to question his diagnosis and his need for medication" and notes that in the past he smoked marijuana while unsupervised on the Center's grounds. This evidence is significant, but without qualified opinion evidence supporting such a conclusion, it is not clear and convincing evidence that Morris should not be given the requested additional privileges. Even so, we do not believe clear and convincing evidence is required, but, rather, that the trial court and not the Center's staff has the discretion to grant or deny requested freedoms or less restrictive confinement. We conclude that the evidence is sufficient to support the trial court's decision, and it did not abuse its discretion in denying the requested freedoms.

AFFIRMED.