THE STATE OF OHIO, APPELLEE, *v.* LANZY, APPELLANT; WESTERN RESERVE PSYCHIATRIC HABILITATION CENTER, APPELLANT.

(Nos. 49836 and 50090— Decided December 5, 1985.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*Franklin J. Hickman,* for appellant Julius Lanzy.

*Anthony J. Celebrezze, Jr.,* attorney general, *David J. Kovach* and *Robert J. Marek,* for appellant Western Reserve Psychiatric Habilitation Center.

KRUPANSKY, J. This appeal requires a determination as to the extent of the trial court's continuing jurisdiction over a person hospitalized after being acquitted of a crime due to a finding of not guilty by reason of insanity ("NGRI"). The relevant facts are as follows:

On May 6, 1983, appellant Julius Lanzy was found not guilty by reason of insanity of attempted murder and carrying a concealed weapon. On May 29, 1983, Lanzy was committed to the Dayton Forensic Center pursuant to R.C. 2945.40.[1] On January 26, 1984, the Dayton Forensic Center requested the trial court to order the transfer of Lanzy to the less restrictive setting of the Western Reserve Psychiatric Habilitation Center ("WRPHC").[2] After, a hearing, the trial court approved the transfer request and ordered Lanzy to the WRPHC. Lanzy appealed that order to this court claiming the trial court had

---

[1] R.C. 2945.40 sets forth the procedure to be followed when a criminal defendant is acquitted by reason of insanity. Among other procedures mandated by the statute is a hearing by the trial court to determine if the defendant requires hospitalization for treatment of the mental illness. If the trial court determines a commitment is necessary, the statute allows the trial court to order any commitment authorized by R.C. 5122.15(C) through (E). R.C. 5122.15(C) through (E) are discussed *infra.*

[2] R.C. 5122.15(E) requires the court to commit the individual to the least restrictive type of commitment consistent with treatment goals and, in the case of a person found NGRI, with public safety.

neither jurisdiction nor statutory authority to issue the order; nevertheless, the trial court's order was affirmed. *State* v. *Lanzy* (Jan. 10, 1985), Cuyahoga App. No. 48347, unreported.[3] Thus, Lanzy was transferred to the WRPHC.

While Lanzy was a resident at the WRPHC, the WRPHC filed with the trial court requesting Lanzy be permitted to participate in therapeutic programs outside his ward but still within the WRPHC facility. After conducting a hearing attended by all interested parties, *viz.*, the prosecutor, Lanzy and the WRPHC, the trial court issued the following order on January 9, 1985:

"Upon hearing and review of evidence and plans submitted, it is hereby ORDERED, ADJUDGED AND DECREED that Julius Lanzy be provided with treatment programs at times and locations stated below:

"9:00 - 11:00 a.m. Monday through Friday computer programming, Cottage 10 with Dr. Fred Frese

"1:00 - 3:00 p.m. Monday through Wednesday — Artician Center — Cottage 10

"1:00 - 2:00 p.m. Thursday — Individual Therapy with Linda Wilson — Cottage 22 (in her office)

"1:00 - 2:00 p.m. Friday — Business Office, Commissary with staff (or Cottage 5 — moved)

"3:00 - 4:00 p.m. Monday — Group Therapy — Cottage 22 — Conference room with Dr. Sally Felder and Linda Wilson

"Julius Lanzy shall be supervised by a staff person at all times and the hospital shall provide staff to accompany him when he leaves Ward 22E to attend the specified programs, and a staff person to accompany him on his return from said programs. This ORDER shall remain in effect until further ORDER of the Court. Any modifications, alterations or changes in schedule [or] location shall be submitted to the Court for its approval."

Lanzy appealed the above-quoted court's order on February 7, 1985. Lanzy's appeal was assigned appellate case No. 49836.

On February 27, 1985, approximately three weeks after Lanzy appealed the above order of the trial court, the same trial court entered the following order:

"Pursuant to Rule 36[4] of the Ohio Rules of Criminal Procedure, the court hereby vacates its Order contained in the Journal Entry entered on January 9, 1985 in Journal Volume 613 at pages

---

[3] In Lanzy's initial appeal before this court he essentially posited two arguments:

First, Lanzy contended the trial court lost all jurisdiction of his case because the trial court failed to hold a hearing concerning his confinement within ninety days of his initial commitment to the Dayton Forensic Center. Lanzy's claim was denied by this court and the issue is not relevant to the present appeal.

Second, Lanzy attacked a portion of the trial court's order which required the receipt of medical reports by the trial court "prior to granting privileges." Lanzy argued the trial court was without statutory authority to grant or withhold any of his privileges. This court interpreted the quoted phrase to be "consistent with the statutory authority granted to the court," without delineating

that authority. Thus, the scope of that authority constitutes the issue before us on the present appeal.

[4] Crim. R. 36 states in full:

"Clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time."

The substantive changes present in this "corrected" judgment entry appear to go beyond the clerical corrections allowed by Crim. R. 36 and raise the possibility this order is void since it was entered after Lanzy's notice of appeal had been filed with this court. No party assigns as error the possible voidness of the entry; therefore, we shall not address the question but discuss the error as assigned.

528-529 and issues instead the following corrected Order. Upon hearing and review of the evidence and plans submitted, it is hereby ordered, adjudged and decreed that the defendant, Julius Lanzy, be supervised by a staff person at all times and that the hospital provide staff to accompany him when he leaves Ward 22E to attend the treatment programs and when he returns to Ward 22E after attending such programs and that at no time shall said defendant be permitted to leave the locked ward for any reason unaccompanied by a security guard. This Order shall remain in effect until further order of the Court."

The WRPHC appealed this February 27 order on March 29, 1985. WRPHC's appeal was assigned case No. 50090. On July 29, 1985, the two appeals were consolidated.

Each appellant raises a single assignment of error.[5] In case No. 49836 Lanzy asserts:

"The final order of the court in this case is invalid since there is no statutory authority for such an order."

In case No. 50090 WRPHC claims:

"The trial court committed reversible error by entering extrajudicial orders."

Essentially, both appellants claim the trial court exceeded its statutory jurisdiction when it issued an order attempting to regulate the treatment of Lanzy. The appellants claim the trial court was empowered to order only the place or site of the treatment and not the manner of treatment. A review of the relevant statutes and case decisions reveals the trial court confused its *statutory jurisdiction* to place NGRI patients in a treatment program with the

authority to *supervise treatment* decisions of NGRI patients once a placement is ordered.

The relevant statutes are certain sections of R.C. 2945.40 and 5122.15. R.C. 2945.40(A) directs the court to hold a "full hearing" to determine if a defendant found NGRI requires hospitaliztion. R.C. 2945.40(C) directs as follows:

"If the court finds * * * the person is * * * mentally ill * * * subject to hospitalization * * * it shall make a commitment authorized by divisions (C) to (E) of [R.C.] 5122.15 * * *."

R.C. 5122.15(C) to (E) state in full:

"(C) If, upon completion of the hearing the court finds clear and convincing evidence that the respondent is a mentally ill person subject to hospitalization by court order, the court shall order the respondent, for a period not to exceed ninety days to:

"(1) A hospital operated by the department of mental health;

"(2) A nonpublic hospital;

"(3) The veterans' administration or other agency of the United States government;

"(4) A community mental health clinical facility;

"(5) Receive private psychiatric or psychological care and treatment;

"(6) Any other suitable facility or person consistent with the diagnosis, prognosis, and treatment needs of the respondent; or

"(7) An inpatient unit administered by a community mental health center licensed by the division of mental health of the department of mental health under section 5119.20 of the Revised Code.

"(D) Any order made pursuant to

---

[5] Both appellants appealed from different judgment entries. This court will proceed with an analysis of both judgments without discussing the potential procedural flaw of the second entry. Footnote 4, *supra.* Furthermore, both judgment entries allow this court to address the single question of the extent a trial court may retain supervision over a defendant found NGRI after the defendant has been committed to a court-ordered treatment program.

division (C)(2), (3), (5), or (6) of this section shall be conditioned upon the receipt by the court of consent by such hospital, facility, or person to accept the respondent.

"Any order made pursuant to division (C)(4) or (7) of this section shall be conditioned on the receipt by the court of evidence of available space in the community mental health clinical facility or inpatient unit administered by a community mental health center.

"(E) In determining the place to which, or the person with whom, the respondent is to be committed, the court shall consider the diagnosis, prognosis, and projected treatment plan for the respondent and order the implementation of the least restrictive alternative available and consistent with treatment goals and, in the case of a person found not guilty by reason of insanity, with public safety."

Thus, the pertinent sections of R.C. 5122.15 are totally directed toward the "place" of commitment.

R.C. 2945.40(F) directs the hospital or facility treating an NGRI patient to inform the trial court before "discharging, releasing, authorizing a trial visit for, or transferring a person committed under" R.C. 2945.40. If the trial court or prosecutor requests a full hearing on the proposed change in confinement of the patient, the trial court must hold such hearing. The section states in part:

"At the conclusion of the hearing, the trial court may discharge, release, authorize a trial visit for, or transfer the person or continue commitment * * *."

Thus, R.C. 2945.40(F) is involved only when the hospital or facility intends to discharge, release, authorize a trial visit for, or transfer of, an NGRI patient.

R.C. 2945.40(D) concerns the procedure to be followed when the NGRI patient is to be considered for a conditional release. Although not defined in the statute, a "conditional release" is "a

release subject to terms and conditions which the trial court may impose by virtue of R.C. 2945.40(D)." *State* v. *Dixon* (Dec. 27, 1984), Cuyahoga App. Nos. 48253 and 48254, unreported.

The foregoing review of the relevant statutory sections indicates the trial court is empowered to exercise control over decisions which involve a change in the location or place of treatment of an NGRI patient. When a hospital determines an NGRI patient is well enough to be transferred to a less restrictive setting, or be discharged, or go on a trial visit, the trial court may allow or refuse the hospital's recommendation based upon the goals of treatment and public safety.

This court recently considered the disputed statutes in *State* v. *Dixon, supra.* In *Dixon,* the court determined college attendance outside the treatment facility for an NGRI patient was a conditional release over which the trial court retained jurisdiction. The court concluded the trial court may impose restrictions anytime a treating facility allows a patient to venture off the grounds of the facility or institution. The court reasoned that a trial court has inherent power in addition to the powers enumerated in the statutes "to impose additional reasonable *release requirements.* * * *"* (Emphasis added.) These additional powers were specifically limited to releases, *i.e.,* when the patient leaves the treating facility.

In the case *sub judice,* Lanzy's therapy will not require that he leave the facility. All the proposed programs of therapy will take place within the confines of the WRPHC. On February 16, 1984, the trial court determined Lanzy could be transferred to the WRPHC consistent with the goals of treatment and public safety. After that point, the trial court's jurisdiction would be properly invoked again only upon a request by the WRPHC to discharge, release, transfer, allow a trial visit or grant a conditional

release for Lanzy. The continuing jurisdiction of the trial court is confined to these enumerated specific instances authorized by statute, which do not grant the court supervisory powers over the details of the NGRI patient's confinement. The trial court's attempt to regulate the details of Lanzy's activities within the confines of the WRPHC is not founded on any statutory authority and is invalid. As the court stated in *State* v. *Lanzy, supra*:

"[This] court is not in a position to prescribe the exact method of an individual's treatment."

The trial court's attempt to impose the condition of a private security guard to monitor the movements of Lanzy at the WRPHC is too intrusive into the treatment of Lanzy to withstand judicial scrutiny. Appellants' assignments of error have merit.

The judgments are reversed in cases Nos. 49836 and 50090.

*Judgments reversed.*

JACKSON, P.J., and NAHRA, J., concur.