THE STATE OF OHIO, APPELLEE, *v.* LAKE, APPELLANT.

(No. 86AP-46—Decided August 26, 1986.)

*Michael Miller,* prosecuting attorney, and *Joyce S. Anderson,* for appellee.

*James Kura,* county public defender, and *Allen V. Adair,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *John K. Alberty* and *Timothy Mangan,* for Ohio Department of Mental Health.

BROGAN, J. Defendant, Michael J. Lake, was arrested on September 25, 1984, and subsequently indicted on one count of breaking and entering. Defendant entered a general plea of not guilty and an additional plea of not guilty by reason of insanity. Defendant was referred to the Southwest Forensic Psychiatry Center for evaluation.

On January 8, 1985, defendant was found not guilty by reason of insanity and again referred to the Southwest Forensic Psychiatry Center for an evaluation as to placement. A hearing was conducted on January 23, 1985, and the court found the defendant to be a mentally ill person in need of hospitalization. It was recommended

that he be sent for treatment at Maryhaven, Inc. However, because Maryhaven would not accept the defendant into its program, he was directed to the Central Ohio Psychiatric Hospital (hereinafter "COPH").

On May 2, 1985, a hearing on continued commitment was held in accordance with R.C. 2945.40(C), and 5122.15(C) and (H). The court found defendant continued to be a mentally ill person subject to court-ordered hospitalization.

On November 8, 1985, defendant filed a motion pursuant to R.C. 5122.15(H) requesting a full hearing on the issue of continued commitment. A hearing was set before Judge Robert Ford for December 12, 1985.

At the hearing, the parties stipulated a report submitted by the Timothy B. Moritz Forensic Unit of COPH. It was requested of the court to order the defendant transferred from Ward 16 to Ward 8 of the hospital and that his privileges to attend off-grounds Alcoholics Anonymous ("AA") meetings be expanded.

The court ordered defendant returned to COPH and specified that his off-ground privileges be expanded from two to seven times per week or such other number as the hospital found appropriate. The court, however, refused to order the defendant's transfer from Ward 16 to Ward 8, finding it lacked the statutory authority to order the requested change.

Defendant appeals the order of the court below, claiming that the trial court had the authority to direct a "not guilty by reason of insanity" (hereinafter "NGRI") patient to be reassigned to another ward of the hospital. Defendant contends the order would have been consistent with the court's obligation to place a person in the least restrictive commitment alternative available.

R.C. 2945.40 sets forth the procedure to be followed when a criminal is acquitted by reason of insanity. If the trial court determines commitment is necessary, R.C. 5122.15(C) compiles a list of facilities where the person subject to hospitalization may be placed.[1] R.C. 5122.15(E) details the factors the court must consider:

"(E) In determining the place to which, or the person with whom, the respondent is to be committed, the court shall consider the diagnosis, prognosis, and projected treatment plan for the respondent and order the implementation of the least restrictive alternative available and consistent with treatment goals and, in the case of a person found not guilty by reason of insanity, with public safety."

After placement, the committing court is empowered to exercise control over any decisions affecting the nature of commitment of an NGRI patient. For example, R.C. 2945.40(F) directs the hospital or facility treating an NGRI patient to inform the trial court

---

[1] R.C. 5122.15(C) states as follows:

"If, upon completion of the hearing the court finds clear and convincing evidence that the respondent is a mentally ill person subject to hospitalization by court order, the court shall order the respondent, for a period not to exceed ninety days to:

"(1) A hospital operated by the department of mental health;

"(2) A nonpublic hospital;

"(3) The veterans' administration or other agency of the United States government;

"(4) A community mental health clinical facility;

"(5) Receive private psychiatric or psychological care and treatment;

"(6) Any other suitable facility or person consistent with the diagnosis, prognosis, and treatment needs of the respondent; or

"(7) An inpatient unit administered by a community mental health center licensed by the division of mental health of the department of mental health under section 5119.20 of the Revised Code."

before "discharging, releasing, authorizing a trial visit for, or transferring a person committed under" R.C. 2945.40. Also, the granting of a conditional release under R.C. 2945.40(D) is subject to the terms and conditions imposed by the trial court.

However, the statutory provisions empowering the court to place an NGRI patient and to regulate the nature of his commitment do not grant the court supervisory powers over the details of a patient's treatment decisions. *State* v. *Lanzy* (1985), 29 Ohio App. 3d 244, 29 OBR 306, 504 N.E. 2d 1150.

Defendant contends that, in keeping with the mandate of R.C. 5122.15(E), implementation of the least restrictive alternative required that the trial court order his transfer from Ward 16 of COPH to Ward 8. Defendant argues that, as a consequence of his transfer to a less restrictive ward, he would have better opportunity to continue his treatment at AA meetings. Defendant essentially suggests that the "least restictive [commitment] alternative" not only encompasses a choice of the appropriate facility listed in R.C. 5122.15(C) but also consideration of the restrictiveness of different wards and units within each facility.

We disagree. The least restrictive alternative requirement relates to choice of a facility and not to particular units or wards within the facility. The placement of an NGRI patient within the particular facility involves treatment considerations within the sole discretion and expertise of the hospital's administration. A court-ordered ward-to-ward transfer would be too intrusive into hospital affairs and possibly inconsistent with the goals established by the patient's doctors.

Furthermore, there was no evidence presented, other than defendant's own testimony, that he would receive better treatment on Ward 8, or that it was, in fact, a less restrictive environment. At the hearing, a representative for COPH stated that, although the defendant's request for transfer was being taken under advisement, Ward 8 was limited in bed space. We cannot find that a patient's own subjective wishes should be allowed to dictate the operations of a hospital.

Although the distinction between court-involved "nature of commitment" decisions and hospital-involved "treatment" decisions may on occasion be blurred, the present action involves considerations which are dominantly treatment related, outside the jurisdiction of the court.

We find the case of *State* v. *Lanzy, supra,* to be persuasive and analogous. In *Lanzy,* the trial court issued an order attempting to direct the NGRI patient's daily intra-hospital activities. Lanzy and the hospital appealed, claiming that the court had exceeded its statutory jurisdictions by attempting to regulate a patient's treatment. The court of appeals agreed, stating that the committing court's continuing jurisdiction is confined to specific instances authorized by statute. *Id.* at 246, 29 OBR at 308-309, 504 N.E. 2d at 1153. A court is not in a position to prescribe the exact method of an individual's treatment. *Id.* at 247-248, 29 OBR at 310, 504 N.E. 2d at 1154.

Accordingly, defendant's assignment of error is overruled, and the order of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

MOYER, P.J., and REILLY, J., concur.

BROGAN, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District.