The STATE of Ohio, Appellee,

v.

TRAYWICK, Appellant.

[Cite as *State v. Traywick* (1991), 72 Ohio App.3d 674.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 57941.

Decided Feb. 25, 1991.

*Stephanie Tubbs Jones*, Prosecuting Attorney, and *L. Christopher Frey*, Assistant Prosecuting Attorney, for appellee.

*Lee I. Fisher*, Attorney General, and *Robert Marek*, Assistant Attorney General, for Department of Mental Health.

*Stege, Delbaum & Hickman Co., L.P.A.*, and *Franklin J. Hickman*, and *Harry B. Keith*, Ohio Legal Rights Service, for appellant.

---

PRYATEL, Judge.

Bobby Traywick, appellant, appeals from the judgment of the trial court which ordered his continued hospitalization at Western Reserve Psychiatric Habilitation Center (hereafter referred to as "WRPHC") pursuant to R.C. 2945.40 and 5122.15, and which further ordered that Traywick's visitation with his daughter be limited. For the reasons set forth below, we modify that portion of the court's order which limits visitation and as modified, we affirm the judgment of the trial court.

## I

On November 15, 1983, Traywick was indicted for aggravated murder with a gun specification following the shooting death of his stepson. At this subsequent trial on these offenses, Traywick was determined to be suffering from atypical psychosis (associated with drug abuse), at the time of the offense; hence, he was found not guilty by reason of insanity.

The trial court found by clear and convincing evidence that Traywick fulfilled the criteria for involuntary commitment and ordered him committed to the Dayton Forensic and Mental Treatment Center. Traywick was subsequently transferred to WRPHC on March 6, 1985 and in March 1987, he was granted monitored weekend and holiday passes, contingent upon having negative drug test results upon his return after exercising each pass. On April 5, 1989, WRPHC's acting director, Eduardo Martinez, M.D., informed

the trial court that WRPHC's staff had determined that Traywick had derived "maximum benefit" from his commitment at WRPHC and that he was an appropriate candidate for conditional release to the Murtis H. Taylor residence facility, Therapeutic Community, a twenty-four-hour supervised setting. Appended to Martinez's letter were: (1) the report of Mary Maher, SWIV, a member of Traywick's treatment team at WRPHC; (2) a Three Panel Report which indicated that Traywick still fulfills the criteria for involuntary commitment; and (3) the report of Roman Paczesniak, a staff psychiatrist at WRPHC.

Following the issuance of Martinez's letter, the prosecutor requested a hearing on the issue of Traywick's conditional release, pursuant to R.C. 2945.40(D). At the subsequent hearing, Paczesniak testified in favor of Traywick's conditional release and stated that in September 1986, Traywick was placed in the center's co-ed unit which is under Paczesniak's direction. At this time, Traywick was completely free of any psychotic symptoms and was not on anti-psychotic medication. Paczesniak further testified that Traywick is also presently free of psychotic symptoms, does not pose a risk of danger to himself or others, has good insight and judgment, and is able to function in the community. Paczesniak additionally stated that Traywick is in remission from his previously diagnosed psychosis, and posited that Traywick should be conditionally released from WRPHC to a therapeutic community residence facility with twenty-four-hour staffing and programming.

Kathleen Dougherty, M.D., of the Cuyahoga County Psychiatric Clinic, testified next in favor of the conditional release and stated that based upon her examination of Traywick, she had concluded that he has shown no signs of mental illness since a few weeks after he killed his stepson. She also testified that Traywick could function in the community without posing a risk to himself or others. Thus, Dougherty further posited, Traywick should be discharged.

Upon questioning by the court, Dougherty admitted that when she last saw Traywick, she had diagnosed him as having "atypical psychosis in remission," but she stated that she has discarded that diagnosis since the remission has continued. She further admitted that Traywick may have a narcissistic disorder, but she stated that she did not consider this a mental illness.

Finally, the Three Panel Report prepared by Martinez and two WRPHC staff psychologists was introduced into evidence. This document indicated that Traywick presently suffers from organic hallucinations, in remission, and narcissistic personality disorder, and therefore presently fulfills the criteria for involuntary commitment. The report further recommended that Traywick be placed at the Murtis H. Taylor facility.

From the evidence adduced, the trial court stated:

"The Court, having heard all the evidence adduced at the hearing and the evidence presented, finds by clear and convincing evidence that the Defendant, Bobby Traywick, is subject to hospitalization by court order under Revised Code 5122.15(H); and that he is suffering from a substantial disorder of thought; organic hallucinations in remission; narcissistic personality disorder; and atypical psychosis in remission, fulfilling the criteria of involuntary commitment per report of three-panel experts, page 3, paragraph 4.

"The Court further finds by clear and convincing evidence that because of the Defendant's mental problems, he and the public would benefit from his further treatment at the Western Reserve Psychiatric Habilitation Center.

"The Court further finds by clear and convincing evidence that the Defendant represents a danger and grave risk to the rights of the general public.

"* * *

"It's therefore the order that the Defendant be continued to be hospitalized at the Western Reserve Psychiatric Habilitation Center in accordance with 2945.40 and 5122.15(H) of the Revised Code."

Traywick now appeals, assigning four errors, which we shall consider out of turn.

## II

"If the trial court's decision is in accordance with Ohio statutes, then Ohio law is unconstitutional as applied to this case.

"The trial court erred in denying Western Reserve Psychiatric Habilitation Center's request for the conditional release of the appellant on the basis of 'public safety' as used in Section 2945.40 of the Revised Code, which is unconstitutionally vague and overbroad as applied to the appellant."

Traywick raises constitutional challenges to the court's ruling which were not raised below. Accordingly, they have been waived and are therefore overruled. See *State v. Levine* (Jan. 25, 1990), Cuyahoga App. No. 56203, unreported, 1990 WL 4484. See, also, *State v. Dodge Ram Van* (1988), 36 Ohio St.3d 168, 170, 522 N.E.2d 524, 526. Accord *State v. Williams* (1977), 51 Ohio St.2d 112, 117, 5 O.O.3d 98, 101, 364 N.E.2d 1364, 1367, wherein the Supreme Court stated:

"This court has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."

### III

"The trial court erred in restricting the appellant's visitation with his daughter, Kenyana Adair."

■ The transcript discloses that Traywick's daughter Kenyana was present during the hearing below and her interest in visiting her father was discussed. Thereafter, the court indicated in its judgment entry that Kenyana was limited to one visit per week.

■ Once a trial court has ordered commitment of a criminal defendant found not guilty by reasons of insanity, the court's continuing jurisdiction is limited to decisions regarding a discharge, a conditional release, a trial visit, or a transfer; the court has no supervisory powers over the details of a patient's confinement or treatment. *State v. Lanzy* (1985), 29 Ohio App.3d 244, 248, 29 OBR 306, 310, 504 N.E.2d 1150, 1154; *State v. Lake* (1986), 33 Ohio App.3d 275, 277, 515 N.E.2d 960, 962. Thus, the court has no jurisdiction to regulate general visitation, as opposed to trial visitation.

Accordingly, that portion of the court's order restricting Kenyana's visitation must be stricken. Traywick's fourth assignment of error is well taken.

### IV

"The trial court committed reversible error in denying Western Reserve Psychiatric Habilitation Center's request to grant conditional release to Bobby Traywick."

Within this assignment of error, Traywick claims that there is not clear and convincing evidence that he is subject to involuntary commitment, and that WRPHC is the least restrictive environment for his commitment. Traywick further asserts that the trial court abused its discretion in denying him conditional release. We shall consider these contentions in turn.

#### A. *Introduction*

If a criminal defendant is found not guilty by reason of insanity, the trial court must determine, *inter alia*, whether that person is mentally ill and subject to hospitalization by court order. R.C. 2945.40(A). As defined in R.C. 5122.01(A) and (B):

"(A) 'Mental illness' means a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life.

"(B) 'Mentally ill person subject to hospitalization by court order' means a mentally ill person who, because of his illness:

**680**

" * * *

"(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness * * *."

Following affirmative findings on these issues, the person ordered to be hospitalized is entitled to hearings on the issues of continued commitment, R.C. 2945.40(E), and whether he or she may be remanded to a less restrictive commitment alternative. *State v. Shepard* (1984), 13 Ohio App.3d 389, 390–396, 13 OBR 473, 474–477, 469 N.E.2d 1040, 1041–1044.

 Where, however, as here, the sole issue to be decided is whether the person, already established as being subject to hospitalization by court order, should be transferred to a less restrictive environment, no party has the burden of proof. *State v. Johnson* (1987), 32 Ohio St.3d 109, 512 N.E.2d 652, syllabus. Rather, both the prosecution and the hospitalized person have a duty to present relevant, competent evidence to aid the court in its determination of whether the proposed less restrictive commitment alternative is appropriate considering the treatment needs of the person and the safety of the public. *Id.* The determination of whether the person should be transferred from his current commitment setting to a less restrictive placement is within the sound discretion of the trial court. *Id.*

### B. *Lack of Clear and Convincing Evidence that Traywick is a Mentally Ill Person Subject to Hospitalization*

 In considering the first argument raised within the assignment of error, *i.e.,* that there was not clear and convincing evidence that Traywick is mentally ill and subject to involuntary hospitalization, we note that the hearing below did not proceed on this issue. Rather, Martinez's letter, which initiated these proceedings, indicated that WRPHC proposed Traywick's conditional release to the Murtis H. Taylor residence facility. Conditional release, unlike discharge, is a commitment alternative. *Id.* at 111, 512 N.E.2d at 655, fn. 1; R.C. 2945.40(D)(1) and (2). Thus, the only issue presented below, and hence the only issue preserved for our review, is the trial court's denial of Traywick's transfer to a less restrictive environment. Cf. *State v. Shepard, supra,* 13 Ohio App.3d at 390, 13 OBR at 474, 469 N.E.2d at 1041. Notwithstanding the foregoing, we note that the Three Panel Report admitted into evidence stated as follows:

"*DIAGNOSIS:* Axis I: Organic hallucinosis in full remission.

Axis II: Narcissistic personalilty [*sic*] disorder.

"*OPINION:*

"Mr. Traywick is suffering from a substantial disorder of thought in full remission, he fulfills the criteria for involuntary commitment."

Thus, there is clear and convincing evidence that Traywick is a mentally ill person and subject to court ordered hospitalization. Accord *In re Burton* (1984), 11 Ohio St.3d 147, 11 OBR 465, 464 N.E.2d 530, paragraph two of the syllabus (an individual whose mental illness is in remission may nonetheless be subject to hospitalization pursuant to court order).

Accordingly, we reject the first argument advanced within Traywick's first assignment of error.

## C. *WRPHC is not the Least Restrictive Environment*

■ As to the second argument advanced in support of Traywick's first assignment of error which challenges the trial court's conclusions that WRPHC is the least restrictive environment and that conditional release to the Murtis Taylor facility should be denied, we note, as was set forth previously, that no party had the burden of proof. *State v. Johnson, supra.* In addition, resolution of the issue of conditional release is within the sound discretion of the trial court. *Id.*

"The term 'abuse of discretion' ' "implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." ' *State, ex rel. Commercial Lovelace Motor Freight, Inc., v. Lancaster* (1986), 22 Ohio St.3d 191, 193, 22 OBR 275, 277, 489 N.E.2d 288, 290, quoting *State, ex rel. Shafer, v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590–591, 50 O.O. 465, 469, 113 N.E.2d 14, 19." *Id.* at 113, 512 N.E.2d at 656.

Moreover, an abuse of discretion will be found only where there exists no evidence upon which the court could have based its decision. *State, ex rel. Commercial Lovelace Motor Freight, Inc., v. Lancaster, supra.*

Applying the foregoing, we hold that the trial court did not abuse its discretion in refusing to order conditional release to the Murtis Taylor facility. While Martinez's letter asserted that Traywick had derived maximum benefit from his hospitalization at WRPHC, the record reflects that Traywick is functioning at a very high level there, which includes serving as a patient representative and participation in various programs. Thus Traywick would be functioning at a higher level there than most patients at the Murtis Taylor facility. Moreover, as Dr. Paczesniak admitted on cross, there is not much structural difference between the Murtis Taylor facility and WRPHC. Further, appellant's counsel conceded below that, "I don't think it's [the Taylor facility's] materially that much different from the present institution that he's at. * * * " Accordingly, we conclude that the decision of the trial court does

advance Traywick's welfare and is rationally based, and therefore does not constitute an abuse of discretion. Cf. R.C. 2945.40(D).

■ Traywick contends that an abuse of discretion should be found, however, because during the hearing the trial court expressed an awareness of the sentence which would have been imposed had Traywick been found criminally culpable for the killing of his stepson. As R.C. 2945.40(D)(6) indicates that conditional release must terminate no later than on the expiration of the maximum criminal sentence the patient could have served, we cannot conclude that the court's awareness of the possible criminal sentence manifests an abuse of discretion.

Thus, in accordance with our narrow standard of review, to wit: abuse of discretion, we find no perversity of will, passion, prejudice, partiality or moral delinquency in the trial court's denial of conditional release to the Murtis H. Taylor facility; hence we affirm that portion of the court's order.

The judgment of the trial court is modified to strike the provision limiting Kenyana's visitation, and as modified, the judgment is affirmed.

*Judgment modified*
*and affirmed as modified.*

PATTON, J., concurs.

ANN McMANAMON, P.J., dissents.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.

ANN McMANAMON, Presiding Judge, dissenting.

I respectfully dissent from the majority resolution of the first assignment of error. I would reverse the denial of Traywick's transfer to a less restrictive environment.

In determining whether an insanity acquittee should be transferred to a less restrictive setting, the trial court must consider the treatment needs of the person and the public safety. *State v. Johnson* (1987), 32 Ohio St.3d 109, 512 N.E.2d 652. This decision rests within the discretion of the trial court, and an appellate court will not reverse absent evidence the trial court acted with " 'perversity of will, passion, prejudice, partiality, or moral delinquency.' " *State, ex rel. Shafer, v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 591,

50 O.O. 465, 469, 113 N.E.2d 14, 19. Further, an abuse of discretion will be found where there is no evidence upon which the trial court could have based its decision. *State, ex rel. Commercial Lovelace Motor Freight, Inc., v. Lancaster* (1986), 22 Ohio St.3d 191, 193, 22 OBR 275, 277, 489 N.E.2d 288, 290.

The record in this case contains no evidence to support the trial court's finding that Traywick would benefit from further treatment at the Western Reserve Psychiatric Habilitation Center ("WRPHC") or that he presents a danger to the general public. The psychiatrists' testimony and the psychiatric reports filed with the court all opine Traywick's psychosis is in remission. One of these psychiatrists, Dr. Kathleen Dougherty, testified the petitioner no longer suffers from any psychiatric disorder. The psychiatrists testified Traywick neither displayed psychotic symptoms nor required any psychotropic medications since his admission to WRPHC in 1985. The psychiatrists also averred Traywick was no danger to the public.

Specifically, Dr. Paczensiak testified the petitioner demonstrated no violent behavior since admission and that his behavior while on weekend and holiday passes was "beyond reproach." Paczensiak's report indicates the petitioner's weekly urine tests for drugs and cannabinoids were "consistently negative." Paczensiak also told the court Traywick had received the maximum benefits possible from hospitalization at WRPHC. Finally, the "Three Panel Report" filed by two staff psychologists and the medical director of WRPHC states, "Mr. Traywick's treatment needs can be more effectively met through placement at the Murtis Taylor MHC."

Not only is the record devoid of any evidence Traywick would benefit from further treatment at WRPHC or that he poses a danger to the public, but the trial court's remarks demonstrate his ruling was the result of passion and prejudice. In announcing his decision, the court stated:

"This guy beat a three-year actual incarceration and at least perhaps maybe a 20–year to life sentence.

"The court didn't believe a damn word any psychiatrist said when this case was being tried. Put that on the record. But I had to send him away because they were telling me he was insane at the time of the crime. I didn't believe a word of it.

" * * * the fact that no one can guarantee * * * he won't walk out and kill two people in a bar across the street from the institution, as occurred this week down at Dayton, a man walked out that was on a pass and walked back,

coming back from a pass, walked into a bar and killed two people. Put that in the record, too.

"MR. MAREK: Your Honor, I object to the Court taking judicial notice of something that was not testified to at this hearing.

"THE COURT: You may object.

"MR. MAREK: Thank you.

"THE COURT: The Court is not taking judicial notice of anything. It was a fact that the man was on a pass from Dayton Mental Health and he came back and went to a beer joint and killed two people for no reason at all.

" * * *

"I don't want this man walking around the City of Cleveland whenever he feels like leaving there, and that's part and parcel of my discretion as to the fact that his time belongs to—he can stay there until the time runs out, as far as the original sentence is concerned.

"Now, I don't want him to be given any special favors, that's sure."

Finally, the court's journal entry also reflects ill will toward Traywick. The court, *sua sponte*, ordered "that all contact with the Murtis H. Taylor Multi–Service Center be immediately terminated." The record demonstrates the Center planned to hire Traywick as a substance abuse counselor, a position for which he had trained at Kent State University.

The trial court's remarks demonstrate the judge never believed Traywick suffered from a psychosis and felt he should remain hospitalized since he "beat" the murder sentence. The court's consideration of the purported Dayton killings also is irrelevant to whether the defendant should be transferred to a less restrictive environment. In light of the record, I would sustain the assignment of error and reverse the trial court's ruling.