THE STATE, EX REL. COMMERCIAL LOVELACE MOTOR FREIGHT, INC., APPELLANT, v. LANCASTER ET AL.; INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as State, ex rel. Commercial Lovelace Motor Freight, Inc., v. Lancaster (1986), 22 Ohio St. 3d 191.]

(No. 85-649—Decided February 26, 1986.)

*Vorys, Sater, Seymour & Pease, Robert E. Tait* and *P. Douglas Barr,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Sheryl L. Creed,* for appellee.

*Per Curiam.* The issue before us, based upon the procedural posture of this case, is whether the commission abused its discretion in finding appellant violated a specific safety requirement.[1] For the attendant reasons, we affirm the judgment below and decline to issue the requested writ.

For this court to grant a writ of mandamus with respect to a decision by the Industrial Commission, it is incumbent upon the relator to demonstrate that the commission committed an abuse of discretion. *State, ex rel. Morris,* v. *Indus. Comm.* (1984), 14 Ohio St. 3d 38. An abuse of discretion "implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." *State, ex rel. Shafer,* v. *Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590 [50 O.O. 465]. An abuse of discretion will be found only where there exists no evidence upon which the commission could have based its decision. *State, ex rel. Morris,* v. *Indus. Comm., supra,* at 39; *State, ex rel. GF Business Equip., Inc.,* v. *Indus. Comm.* (1981), 66 Ohio St. 2d 446 [20 O.O.3d 379]; *State, ex rel. Humble,* v. *Mark Concepts, Inc.* (1979), 60 Ohio St. 2d 77 [14 O.O.3d 275].

The safety requirement in question, Ohio Adm. Code 4121:1-5-13(E)(1)(b) provides, in pertinent part:

"(E) Overhead Protection

"(1) High-lift rider trucks shall have a substantial overhead guard as protection against falling objects, constructed in a manner that does not interfere with visibility. Opening shall not exceed six (6) inches in one of

---

[1] Under Ohio law, a claimant must establish the following before an additional award for violation of a specific safety requirement may be granted:

(1) That there exists an applicable and specific safety requirement in effect at the time of the injury; (2) that the employer failed to comply with the requirement; and (3) that the failure to comply was the cause of the injury in question. *State, ex rel. Trydle,* v. *Indus. Comm.* (1972), 32 Ohio St. 2d 257 [61 O.O.2d 488]; *State, ex rel. Reed,* v. *Indus. Comm.* (1965), 2 Ohio St. 2d 200 [31 O.O.2d 408].

In addition, this court has repeatedly held that safety requirements must be strictly construed in reviewing applications for additional awards. *State, ex rel. Whitman,* v. *Indus. Comm.* (1936), 131 Ohio St. 375 [6 O.O. 88]; *State, ex rel. Brilliant Electric Sign Co.,* v. *Indus. Comm.* (1979), 57 Ohio St. 2d 51 [11 O.O.3d 214].

the two dimensions, width or length, and shall extend over the operator under all normal truck operation, including forward tilts.

"* * *

"(b) Exception

"Where headroom conditions are such that overhead protection cannot be used (such as loading of truck bodies, rail cars, etc.) means of limiting the lift height shall be provided and the load shall not extend above the operator's head."

Appellant argues that the tow-motor vehicle used by claimant was in compliance with the exception above, by virtue of its use to unload semi-trailer trucks. This contention, however, is belied by claimant's assertion that tow motors had been used successfully prior to the time the overhead protection was removed. Similarly, the staff hearing officer indicated that, in his experience, removal of overhead protection equipment in most if not all instances was neither necessary nor desirable. In contrast, appellant's vice president, Robert Hamilton, averred that removal of the overhead guards was necessary to give the tow motors clearance to "enter many truck bodies without hitting the tops of trailers and trucks." The existence of conflicting evidence was sufficient to meet the "some evidence" standard (see, e.g., State, ex rel. GF Business Equip., Inc., supra) and compels us to uphold the commission's discretionary determination as to the validity of the conflicting evidence. Institutionally, we cannot reweigh the evidence nor can we substitute our own judgment for that of the commission where some evidence exists to support the commission's determination.

Appellant offers a second argument to support its request for a writ by noting that Ohio Adm. Code 4121:1-5-01(A) indicates that "[i]nstallations or constructions built or contracted for prior to "* * * [August 1, 1977] shall be deemed to comply" (emphasis added) with the Code as long as such installations or constructions complied "with the provisions of any applicable code which was in effect prior to said date." Since overhead protection on forklifts was not mandated prior to August 1, 1977, appellant argues it should not be penalized by any subsequent administrative provision.

We find this argument unconvincing as did the court of appeals below for two reasons. First, forklift vehicles of the nature in question do not appear to be trade fixtures within the purview of the phrase "installations or constructions." Second, even if we assume arguendo the tow motors were "installations" or "constructions," appellant's assertion of when the tow motor was purchased was not substantiated with any objective specificity, but rather upon claimant's and co-workers' estimations of the age of the vehicle. Accordingly, we are compelled to reject this imaginative argument.

For these reasons stated hereinabove we affirm the judgment of the court of appeals and decline to issue the extraordinary writ of mandamus.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, C. BROWN and DOUGLAS, JJ., concur.

HOLMES and WRIGHT, JJ., dissent.

CLIFFORD F. BROWN, J., concurring. I concur in the judgment and excellent analysis of the majority in today's decision. I write separately, however, to once more express my disapproval of the majority's needless reliance on the so-called "some evidence" rule. I have often professed my dislike for this rule. See, *e.g., Meeks* v. *Ohio Brass Co.* (1984), 10 Ohio St. 3d 147, 149-150 (Clifford F. Brown, J., concurring), and the many cases cited therein. I continue in my belief that this rule is meaningless and often unjust.

HOLMES, J., dissenting. The question before the reviewing courts here is not whether compensation for an injury was properly awarded, but whether an award for a specific safety violation should have been granted. Such an award is a penalty by way of monetary sanction against the employer for not providing those industrial safety devices as deemed necessary by the Industrial Commission, and so promulgated by way of specific rules to be specifically applied. There must be an applicable and specific safety requirement in effect at the time of the injury. *State, ex rel. Trydle,* v. *Indus. Comm.* (1972), 32 Ohio St. 2d 257 [61 O.O.2d 488]. The failure to comply with any specific requirement must have been the cause of the injury in question, *State, ex rel. Reed,* v. *Indus. Comm.* (1965), 2 Ohio St. 2d 200 [31 O.O.2d 408]. The safety regulation must have been "plainly applicable" to the circumstances at issue. *State, ex rel. Brilliant Electric Sign Co.,* v. *Indus. Comm.* (1979), 57 Ohio St. 2d 51, 54 [11 O.O.3d 214]. Since the employer has "power to exercise his judgment with respect to determining the question of necessity," there can be no award for a mere "error in judgment" by the employer. *State, ex rel. Rae,* v. *Indus. Comm.* (1939), 136 Ohio St. 168, 172 [16 O.O. 119]. Furthermore, any award given "for failure to comply with a specific safety requirement" is in the nature of a penalty. *State, ex rel. Whitman,* v. *Indus. Comm.* (1936), 131 Ohio St. 375, 379 [6 O.O. 88]. Consequently, in deciding on an application for additional awards, the requirements of the safety rules must be strictly construed — both by the commission and by the courts.

As to the requirement of strict interpretation of such specific safety requirements, it was held by this court in *State, ex rel. Wilms,* v. *Blake* (1945), 144 Ohio St. 619 [30 O.O. 220], that where upon the evidence, the safety requirement is susceptible to two interpretations — one that the requirement was violated and under the other that it was not — mandamus will not lie to compel the additional award. The court specifically stated at 627:

"A writ of mandamus will not issue to require the Industrial Commission to allow a claim for additional compensation * * * where the context

of the specific safety requirement, the violation of which is charged, is susceptible of such interpretation that an honest difference of opinion may exist as to whether there was, under the facts, a violation of such requirement."

Applying the law to the specific facts of this case, there was no evidence upon which the commission could have found a specific safety violation, and therefore there was a clear legal right for the writ of mandamus to have been issued to the relator. In the first instance, the specific safety requirement promulgated by the commission here, Ohio Adm. Code 4121:1-5-13(E)(1), was designed for the safety of the operator of a mechanized lifting device known as a forklift truck, such safety requirement being the installation of an overhead protective guard or screen "as protection against falling objects * * *." The "falling objects" referred to in this section reasonably refer to materials being handled by the forklift truck. Such a reference to materials being handled as the concern related to "falling objects" is to be found in Ohio Adm. Code 4121:1-5-13(E)(1)(a). One need not be a safety engineer in order to construe this specific safety requirement. Upon a reasonable construction thereof, one may conclude that it had been promulgated to protect the operator from objects being loaded with the forklift, that were hoisted overhead and had fallen in such loading or unloading process. The rule, in my view, did not contemplate protection from falling portions of the building housing the employer's operation, as here, where a door, with a defective spring holding device, came down upon the operator-claimant.

Perhaps there is a specific safety regulation relating to industrial doors which could have been violated here, but such is not the claim. What would have been the determination here if a ceiling beam of the building had fallen upon the claimant? Is that in like manner a "falling object" contemplated by the rule? If so, would a fellow employee standing beside the forklift, who was also injured by the falling beam, be granted the penalty award?

Secondly, this specific safety requirement here should not have been applied in that the exception pursuant to Ohio Adm. Code 4121:1-5-13(E)(1)(b), as set forth within the majority opinion, was applicable. Here the forklift was indeed being utilized in a loading and unloading process within certain commercial trucks used for hauling cargo. More specifically, as reported by McCollum, the commission's special investigator, Gorth was in the process of "unloading [goods from] a tractor trailer." The evidence is clear that due to the variable in height of truck bodies and roofs, Commercial Lovelace Motor Freight Company, the relator, either purchased its forklifts without overhead guards, or removed the same after the purchase thereof. Accordingly, Robert Hamilton, Vice President of Fleet Maintenance of relator, stated by way of affidavit in the record:

"Because of variations in truck body, yard and dock heights, I must make sure that the masts (the 'rails' on the front of the powered industrial

trucks to which the 'forks' are attached) on the powered industrial trucks I buy are of limited height and that they come without overhead guards. The reason is that if the masts are too high and if the powered industrial trucks have overhead guards, they will not be able to enter many truck bodies without hitting the tops of trailers and trucks."

Further, Hamilton, in his affidavit, referenced the exception to the overhead guard safety regulation as follows:

"The overhead clearance limitations discussed above have resulted in an exemption being granted to the trucking industry by all state and federal occupational safety related agencies from the requirement that powered industrial trucks be equipped with overhead guards."

Also, Hamilton testified that the company had complied with the rule relative to the exception by installing "lift stops":

"Because we have no overhead guards on our powered industrial trucks, we require that the operator never raise the forks higher than is necessary to move safely across the dock and in and out of truck bodies. Also, all powered industrial trucks which CL [relator] purchases or leases are equipped with 'lift stops' so that it is impossible to raise cargo above the operator's head, which, by corporate procedure the operator is not supposed to do anyway. Those precautions are intended to eliminate the risk that the operator will be injured by cargo falling from the forks. Otherwise, the operator runs no greater risk of injury from falling objects than any other dock employee."

The commission determined that the specific safety provision had been violated in that there had been no evidence presented by the employer to show that the headroom conditions of the truck being unloaded were such that overhead protection could not be utilized in that particular instance of unloading. On reconsideration, the commission allowed that there was a conflict in evidence on the issue. However, the stance of the evidence was such that the commission should have found the general loading and unloading conditions required that the overhead guards could not be utilized on the forklift trucks. The commission applied the provision in a totally unreasonable way, in that it would require a determination to be made of the height and clearance, in the instance of each truck being loaded or unloaded. The relator made a reasonable business judgment that most trucks it would be loading and unloading would not allow the use of the overhead guards. Accordingly, the company determined to install lift stops in accordance with the regulation and its exception, and in full compliance therewith. Therefore, in my view, the commission abused its discretion in this regard.

Based upon the foregoing, I would grant the writ.

WRIGHT, J., concurs in the foregoing dissenting opinion.