DECISION
In this original action, relator, Michael J. Murphy, has requested that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying additional compensation for the violation of a specific safety requirement ("VSSR") and to issue an order consistent with applicable law.
Pursuant to Civ.R. 53(C) and Loc.R. 12, Section (M), of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law, and has recommended that the requested writ of mandamus be denied. (Magistrate's Decision, Appendix A.) There have been no objections filed to the magistrate's decision.
After relator sustained an injury in October 1998, his application for an additional award due to the alleged VSSR was investigated by a safety investigator of the Ohio Bureau of Workers' Compensation. Relator's application was ultimately denied, principally upon the basis that the alleged safety violations were not applicable to the factual circumstances giving rise to relator's injury. The magistrate concluded that the commission did not abuse its discretion in denying relator's VSSR application.
As correctly pointed out by the magistrate in her decision, a claimant, alleging a VSSR, has the burden of establishing that the specific safety requirement was applicable, that it was violated, and that the violation was the cause of the occupational injury. State ex rel.Commercial Lovelace Motor Freight, Inc. v. Lancaster (1986),22 Ohio St.3d 191, 193. The magistrate concluded that the commission was within its discretion to find that the safety regulations alleged by relator did not apply to the factual circumstances giving rise to his injury.
Following independent review pursuant to Civ.R. 53(C), we find that the magistrate has properly determined the pertinent facts and applied the salient law thereto. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.
In accordance with the recommendation contained in the magistrate's decision, the requested writ of mandamus is denied.
Writ of mandamus denied.
LAZARUS and KLATT, JJ., concur.
 APPENDIX A IN MANDAMUS
Relator, Michael J. Murphy, filed this original action in mandamus asking the court to compel respondent Industrial Commission of Ohio to vacate its order denying additional compensation for a violation of a specific safety requirement ("VSSR") and to issue an order that is consistent with applicable law.
Findings of Fact:
1. In October 1998, Michael J. Murphy ("claimant") was working on an overpass or bridge over a four-lane highway. He and others were engaged in sandblasting steelwork on the underside of the bridge prior to painting it.
2. The overpass had four steel beams running the length of the structure, with additional steelwork to support a road. The bottom edge of the steel beams was 15 feet above the highway.
3. Because traffic was maintained on the highway, the workers did not use ladders to reach the beams. Instead, they worked on a platform suspended from the bridge.
4. The platform was suspended from steel cables stretched along the underside of the bridge, running the same direction as the steel beams. The cables were pulled tight, and, to prevent sagging, stirrups of rope held the cables up at intervals. The distance from the stretched-tight cables to the ground was about 14 feet, 10 inches.
5. Trapeze-like hangers were suspended from the cables, and wooden planks were laid across the bars of the trapezes to form a platform. There were usually three trapezes holding the planking. The planks provided a platform that was about 18 inches wide and extended the width of the bridge. The planks were tied to the trapezes with ropes.
6. Because the vertical sides of the trapezes were about two feet long, the planks were about two feet below the cable.
7. The platform could be moved from one end of the bridge to the other, so that workers could sand and paint the entire length of the steel beams. That is, the trapezes could be shifted horizontally along the cable from which they were suspended. As the platform was moved from one end of the steel beam to the other, it would remain at about the same height above the four-lane highway.
8. On October 29, 1998, claimant and others were working on the platform. The work area was enclosed within tarps for dust abatement. One side of the highway below was apparently closed. However, an oversized load drove under the bridge and snapped one of the cables. Claimant was thrown from the platform, fell against the work trailer, and hit the ground. He sustained multiple injuries.
9. In October 2000, claimant filed a VSSR application, citing violation of safety requirements including Ohio Adm. Code 4121:1-3-10(K)(5) as well as several subdivisions under Ohio Adm. Code 4121:1-3-03(J).
10. A safety investigator for the Bureau of Workers' Compensation provided a report.
11. In September 2001, a hearing was held, resulting in a denial of the VSSR application:
"It is the finding of the Staff Hearing Officer that the Application for Violation of a Specific Safety Requirement be denied for the reason that either no violation of the cited safety requirements are found or the cited safety requirements do not apply.
"The claimant was injured in the course of and arising out of his employment on 10/29/1998, while working as a painter-rigger-blaster.
"The claimant was working underneath a bridge located on state route 33 just west of state route 42. The claimant at the time of the accident was sandblasting the bridge in preparation for painting.
"In order to gain access to the bottom of the bridge, a one-inch thick steel cable was threaded through the water drain openings from the top of the bridge the length of the bridge to drain openings on the opposite side of the bridge. The cable was secured by cable splicers. The claimant and his co-workers worked on "a trapeze" attached to the steel cable.
"While the claimant and his co-workers worked on the underside of the bridge, one side of the highway was closed to traffic.
"The accident on 10/29/1998 occurred when oversized semi trucks clipped the steel cable, causing it to break, and causing the claimant to fall.
"* * *
"Safety rule 4121:1-3-10(K)(5) is * * * found not to apply. This safety rule concerns `two-point suspension scaffold.'
" `Two-point suspension scaffold' is defined under 4121:1-3-10(B)(38). This section states that a two-point suspension scaffold '* * * means a scaffold the platform of which is supported by stirrups or hangers at two points to permit raising or low[er]ing, suspended from overhead supports.'
"The immediate picture of the above cited scaffold is to window washers going up and down a high rise building.
"The scaffolding used on this bridge does not go up and down and does not appear to fit within the stated definition. Accordingly, on that basis alone, rule 4121:1-3-10(K)(5) is not found applicable.
"However, even if this scaffold could fit under rule 4121:1-3-10(38), rule 4121:1-3-10(K)(5) is not found applicable to the claimant's injury. Rule 4121:1-3-10(K)(5) appears to refer to anchoring of the steel cable to the building itself and not to the cable. No anchorage gave way in the described accident to the claimant on 10/29/1998. The injury occurred when the cable snapped. Accordingly, this rule is inapplicable to the claimant's injury.
"* * *
"Rules 4121:1-3-03(J)(1), and (3) through (7) are also found not applicable.
"There is no evidence that the claimant was working fifteen (15) feet above the ground. The investigator indicated in her report that the cable was strung across the bridge at approximately 14' to [sic] 10" from the ground. The working platform was below the cable. The claimant could not have been working at 15 feet or above at the time of the injury.
"The claimant provided no evidence that he was working at 15 feet or above."
12. Claimant filed a request for rehearing, providing an expert report from Gary Curren, a board-certified construction safety expert, to establish that the platform at issue was a two-point suspension scaffold.
13. The commission denied rehearing, concluding that claimant had not established that he was unable to obtain the expert report prior to the hearing.
Conclusions of Law:
Claimant contends that the commission abused its discretion in denying his VSSR application. Specifically, claimant argues that the platform on which he was working was a "two-point suspended scaffold" as defined at Ohio Adm. Code 4121:1- 3-10(B)(30). Further, claimant argues that the commission abused its discretion in refusing to grant a rehearing. Claimant does not challenge the ruling as to toeboards and guardrails (which was omitted from the order as quoted above), nor does he attempt to establish that he was working 15 feet or more above the ground.
The applicable law is set forth in numerous judicial decisions, including State ex rel. Buehler Food Markets, Inc. v. Indus. Comm.
(1980), 64 Ohio St.2d 16, and State ex rel. Watson v. Indus. Comm.
(1986), 29 Ohio App.3d 354. In brief, the claimant has the burden of establishing that the specific safety requirement was applicable, that it was violated, and that the violation was the cause of the occupational injury. State ex rel. Commercial Lovelace Motor Freight, Inc. v.Lancaster (1986), 22 Ohio St.3d 191, 193. Because a VSSR award is punitive, the safety requirement must be construed in favor of the employer. State ex rel. Burton v. Indus. Comm. (1989), 46 Ohio St.3d 170.
In the present action, for the safety requirements in Ohio Adm. Code4121:1-3-10(K) to apply, claimant had to be working on a "two-point suspension scaffold," which is defined at Ohio Adm. Code 4121:1-3-10(B)(38) as:
"* * * a scaffold the platform of which supported by stirrups or hangers at two points to permit raising or lowering, suspended from overhead supports."
At the subject work site, the suspended cables were stretched from one end of the bridge to the other, and a narrow platform was suspended from the cables on two trapeze-like hangers. An additional hanger supported the platform in the middle because the platform planks were not long enough to reach the entire width of the bridge.
The evidence indicates that the platform could be moved sideways from one end of the overpass to the other end. However, there is no evidence that the platform could be moved higher or lower above the ground. That is, there is no evidence that the hangers permitted "raising or lowering the platform."
Although claimant may have been working on a scaffold that met the general description of a suspended scaffold, the question before the commission was whether claimant was working on a suspended scaffold as defined in Adm. Code 4121:1-3-10(B)(38). For VSSR purposes, the code explicitly restricts the term to platforms that are supported at two points in such a way as "to permit raising or lowering" the platform from overhead supports. Here, the platform was suspended by three trapeze-like hangers that did not permit the platform to be raised or lowered, although the platform could be moved horizontally as the work progressed. Accordingly, the commission was within its discretion to find that the safety rule did not apply.
The commission was required by law to interpret the safety rule strictly and to resolve any ambiguity in favor of the employer due to the punitive nature of a VSSR award. Burton, supra. The magistrate concludes that claimant has not met his burden in mandamus of proving an abuse of discretion and recommends that the court deny the requested writ.