The STATE ex rel. GRIFFITH,

v.

RADIX WIRE COMPANY et al.

[Cite as *State ex rel. Griffith v. Radix Wire Co.*, 161 Ohio App.3d 30, 2005-Ohio-2200.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–541.

Decided May 5, 2005.

Dworken & Bernstein Co., L.P.A., and Jonathan T. Stender, for relator.

Jim Petro, Attorney General, and Kelley R. Haddox, Assistant Attorney General, for respondent Industrial Commission of Ohio.

---

PEGGY BRYANT, Judge.

{¶ 1} Relator, Edward Griffith, commenced this original action requesting a writ of mandamus that orders respondent, Industrial Commission of Ohio, (1) to vacate its order declaring an overpayment of temporary total disability compensation to relator for the period of December 17, 2001, through August 21, 2002, and finding that the overpayment should be collected pursuant to the fraud provisions of R.C. 4123.511(J), and (2) to find that temporary total disability compensation is payable for the time period of December 17, 2001, through December 29, 2001, and January 25, 2002, through August 21, 2002, and that no act of fraud was committed.

{¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded that some evidence supports the commission's decision that declared both an overpayment of temporary total disability compensation and that fraud had been committed in relator's receiving temporary total disability compensation. Accordingly, the magistrate determined that the requested writ should be denied.

{¶ 3} Relator filed objections to the magistrate's decision, contending that the magistrate had erred in concluding that (1) the commission's declaration of an overpayment and fraud relating to the period from December 17, 2001, to December 29, 2001, is supported by some evidence, (2) some evidence supports the finding of an overpayment and fraud for the period of January 25, 2001, to August 21, 2002, and (3) the record supports a finding of fraud for the period of December 29, 2001, to January 24, 2002.

{¶ 4} Relator does not object to the magistrate's finding of facts, and we adopt those as our own. According to those facts, relator sustained an injury at work on December 14, 2001, that, according to relator's treating physician, rendered him incapable of returning to his former position of employment from December 17, 2001, through August 21, 2002. Although relator's treating physician determined that relator was capable of light-duty work, his employer had none available during that period.

{¶ 5} In March 2002, the Ohio Bureau of Workers' Compensation received a tip that relator was performing work at Frank's Auto Body & Restoration while he was receiving temporary total disability compensation. Investigation revealed

that relator received a check in the amount of $288 dated December 29, 2001, and received a second check dated January 24, 2002, in the amount of $280.

{¶ 6} Following a hearing, the district hearing officer concluded that the bureau had failed to prove that the initial check was issued for work performed subsequent to relator's injury on December 14, 2001. Determining that the second check covered work relator had performed from December 29, 2001, to January 24, 2002, the district hearing officer declared an overpayment for that period but found no fraud. For the period of January 24, 2002, through August 21, 2002, the district hearing officer found that relator had not committed fraud in receiving benefits, but, to the contrary, benefits had been properly continued based on the medical evidence in the record.

{¶ 7} On appeal, the staff hearing officer disagreed extensively with the district hearing officer. The staff hearing officer found the testimony of relator and his friend, Frank Latin, the owner of Frank's Auto Body, not credible. Instead, the staff hearing officer determined that relator must have earned the first check subsequent to his injury because (1) he no longer could work for his employer, was not yet receiving benefits, and thus needed money and (2) even though he had frequented his friend's shop for years, he had never received any money from Latin until after his work injury. Accordingly, the staff hearing officer found that relator had received the money for work performed after his work injury, and on that premise, the staff hearing officer declared an overpayment. The staff hearing officer further found fraud, concluding that relator had signed applications for temporary total disability benefits that represented that he was not working, but in actuality, relator was receiving remuneration for work he performed for Frank's Auto Body. With a finding of fraud, the staff hearing officer declared an overpayment of all temporary total disability compensation relator had received.

{¶ 8} In his first objection, relator addresses the time period from December 17, 2001, to December 29, 2001. The magistrate concluded that some evidence supported the commission's determination that relator had been working while receiving temporary total disability compensation and, in doing so, had defrauded the bureau. The magistrate premised her determination on the commission's ability to weigh the credibility of the witnesses and find that testimony not to be credible.

{¶ 9} While the magistrate correctly notes that the commission may weigh the credibility of the witnesses and disregard that testimony that it finds not credible, the commission found not credible the only testimony relating to the dates that relator allegedly worked during the relevant period, the testimony of relator and Frank Latin. With that testimony eliminated, the record contains no evidence that relator's work for Frank's Auto Body, for which he received payment on December 29, 2001, had occurred after his injury on December 14, 2001.

{¶ 10} Instead, the commission speculated that because relator knew the owner of Frank's Auto Body and had visited but had never worked at the body shop prior to his injury, relator's motivation for providing paid services to the owner was relator's own need for money following his injury and subsequent inability to work for his employer. No evidence, however, supports that conjecture, and a finding of wrongdoing cannot be premised on speculation. Indeed, were we to conclude that the evidence here is sufficient, then the bureau would be relieved of proving much more than a claimant's receipt of money during the period of disability; the need to tie the money into activity performed during the period of disability would be all but eliminated.

{¶ 11} Moreover, because the evidence fails to support the commission's determination that relator worked during a period of disability, the finding of fraud related to that time period is also not supported in the record. Relator's first objection is sustained.

{¶ 12} Relator's third objection, taken out of order, relates to the period from December 29, 2001, to January 24, 2002. Relator admits that he met with Frank Latin on December 29 to receive payment for the work he did in late November and early December. At the time, Latin asked relator to deliver some vehicles, answer phones, and put tools back in their proper place for Frank's Auto Body. Relator agreed and performed that work until January 15, when the pain from his work injury began to worsen. Per the district hearing officer's order, relator admits an overpayment for the time period at issue but contests the commission's finding of fraud.

{¶ 13} On January 2, 2002, and January 21, 2002, relator signed C–84 forms indicating that he was not working. When asked why he had so indicated, relator responded "[I] didn't consider doing what I was doing for Frank work. Basically I just checked the box and signed my name." According to the medical evidence in the file, relator was capable of performing light-duty work during the period at issue; his employer, however, had none available. Relator testified that what he was doing for his friend was light-duty work, and no evidence to the contrary exists in the record.

{¶ 14} Temporary total disability benefits are "meant to compensate a claimant for the loss of earnings sustained while the [work] injury heals." *State ex rel. Parma Community Gen. Hosp. v. Jankowski*, 95 Ohio St.3d 340, 2002-Ohio-2336, 767 N.E.2d 1143, ¶ 8, citing *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533. Accordingly, temporary total benefits cease when a claimant "has returned to work." Id., citing *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 632, 23 O.O.3d 518, 433 N.E.2d 586. Although *Ramirez* does not define "work," later cases indicate that

remuneration is a key element. Id., citing *State ex rel. Nye v. Indus. Comm.* (1986), 22 Ohio St.3d 75, 78, 22 OBR 91, 488 N.E.2d 867. Thus, if a claimant (1) is performing only minimal activity that is not inconsistent with the medical restrictions that the treating physician imposed and (2) is receiving no remuneration for it, the claimant generally may receive temporary total disability compensation for the period in which the claimant is performing the activity. *Jankowski,* supra.

{¶ 15} Here, no evidence suggests that relator's work activity for Frank's Auto Body was inconsistent with the light-duty restrictions that his treating physician imposed. Relator, however, admits that he received some remuneration for the activity. Thus, he admits that he is not entitled to temporary total disability compensation for the time period at issue. The remaining question is whether the evidence supports the staff hearing officer's finding of fraud.

{¶ 16} In reviewing the commission's fraud determination, we are guided by the principles set forth in *State ex rel. Lawson v. Mondie Forge,* 104 Ohio St.3d 39, 2004-Ohio-6086, 817 N.E.2d 880. In that case, the claimant was being paid permanent total disability compensation. At the same time, he was performing services for the village where he both lived and served on city council. Most of the work he performed for free, although he received a total compensation of about $300 for each year involved, plus $6 an hour for plowing. The commission found the claimant's activity to be inconsistent with the receipt of permanent total disability compensation and further found that the claimant had engaged in fraud. Even though some of the activities that the claimant performed were outside the limits that the doctors had imposed on the claimant, the Supreme Court determined that the vast majority of the work performed was within those limits. Noting that permanent disability compensation does not render a claimant housebound or unable to perform any physical activity, the Supreme Court reversed the commission's finding of fraud.

{¶ 17} Applying the rationale of *Lawson* to this temporary total disability case, we are compelled to conclude that the evidence does not support a finding of fraud. Relator was released to light-duty work. No evidence in the record suggests that his activity exceeded the light-duty limits that his doctor had imposed from December 29, 2001, to January 24, 2002, and all the evidence indicates that relator did not receive substantial sums for his efforts. In addition, at the time that he signed the forms on which the commission relies for a finding of fraud, relator had not received any benefits. Indeed, he did not actually receive any temporary total disability compensation until after he had completed all activity on behalf of Frank's Auto Body.

{¶ 18} The evidence thus falls short of proving that relator had knowingly misrepresented that he was not working. In addition to demonstrating that relator had signed the request for compensation and had engaged in some form

of work activity, the bureau also must produce evidence demonstrating some intent to defraud. Such evidence is lacking here, where relator was performing activity for a limited period of time within the limits that his physician permitted, was being paid an insubstantial sum of money, and was not receiving benefits at the time he was working. Because that evidence fails to rise to the level of fraud, relator's third objection is sustained.

{¶ 19} Relator's second objection challenges the magistrate's conclusion that the commission had properly found that relator had fraudulently received benefits after January 24, 2002. The record contains no evidence that relator either worked after January 24, 2002, or received compensation during that period. To the contrary, his doctor's reports indicate that he was not working, and the medical evidence in the record supports the conclusion that his condition worsened during that period. Accordingly, the district hearing officer properly determined that the evidence does not support a finding of compensation during the period at issue and that the medical evidence supports continuing temporary total disability compensation payments. Relator's second objection is sustained.

{¶ 20} Following independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts, and we adopt them as our own. For the reasons set forth in this decision, however, we reject the magistrate's conclusions of law and issue a writ of mandamus that orders the Industrial Commission (1) to vacate its order declaring an overpayment of temporary total disability compensation paid to relator for the period of December 17, 2001, through August 21, 2002, and finding that the overpayment should be collected pursuant to the fraud provisions of R.C. 4123.511(J), and (2) to find that temporary total disability compensation is payable for the time period of December 17, 2001, through December 29, 2001, and January 25, 2002, through August 21, 2002, and that no act of fraud was committed.

Objections sustained
and writ granted.

KLATT and BOWMAN, JJ., concur.

BOWMAN, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

APPENDIX A

MAGISTRATE'S DECISION

Rendered on November 23, 2004

STEPHANIE BISCA BROOKS, Magistrate.

{¶ 21} Relator, Edward Griffith, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission

of Ohio (1) to vacate its order that declared an overpayment of temporary total disability ("TTD") compensation paid to relator for the period of December 17, 2001, through August 21, 2002, and found that the overpayment should be collected pursuant to the fraud provisions of R.C. 4123.511(J) and (2) to find that TTD compensation is payable for the time periods of December 17, 2001, through December 29, 2002 and January 25 through August 21, 2002, and that no act of fraud was committed.

*Findings of Fact:*

{¶ 22} 1. Relator sustained a work-related injury on December 14, 2001, while employed as a mechanic for respondent Radix Wire Company. Relator's claim has been allowed for "sprain sacroiliac, bilateral sprain hip & thigh nos."

{¶ 23} 2. Relator's treating physician, Josephine Fernando, M.D., certified that relator was unable to return to his former position of employment during the period of December 17, 2001, through August 21, 2002.

{¶ 24} 3. Dr. Fernando indicated that relator could perform light-duty work; however, the employer did not have any light-duty work available during this period.

{¶ 25} 4. In March 2002, the Ohio Bureau of Workers' Compensation ("BWC") received an anonymous tip that relator may be working at Frank's Auto Body & Restoration while receiving TTD compensation. The matter was referred to the BWC's Special Investigation Unit ("SIU") and an investigation began.

{¶ 26} 5. When initially interviewed, relator denied working at all while receiving workers' compensation benefits. When asked if he had worked for Frank's Auto Body, relator admitted that he had put up a few walls in the shop a few weeks before he began receiving workers' compensation benefits.

{¶ 27} 6. The SIU received two business checks from Frank J. Latin, owner of Frank's Auto Body, which were payable to relator. The first check was dated December 29, 2001, in the amount of $288. The memo area of the check listed "casual labor." The second check was dated January 24, 2002, in the amount of $280. The memo area of this check was blank. Both checks were endorsed with relator's signature.

{¶ 28} 7. According to the statement taken from Mr. Latin, he had known relator for approximately 15 years—since high school. Relator regularly spent time at Frank's Auto Body, observing and visiting. In late 2001, relator asked Mr. Latin if he needed any help at the shop, and Mr. Latin had relator build a six-by-five feet room in a newly rented building. Mr. Latin indicated that relator had worked two to three days a week for three to four hours a day and that the work was completed in December 2001. Mr. Latin indicated that in early 2002, he had asked relator to assist with delivering and picking up vehicles at a nearby

detail shop and indicated further that relator had helped out by answering telephones, cleaning up the shop, and putting away tools. When asked whether relator had worked for him at any other time, Mr. Latin said that he had not.

{¶ 29} 8. According to relator's statements and testimony, he had visited Mr. Latin at Frank's Auto Body regularly from 1989 on because Mr. Latin was a friend of his. Relator indicated that he had worked for Mr. Latin from the middle of November until the first part of December, building the room for the compressor, and further indicated that the check dated December 29, 2001, was for that work, which was completed before the date of his injury. Relator did admit that he drove some vehicles for Mr. Latin, answered telephones, and put away some tools in early 2002, but that the work he was doing was not outside of the restrictions given to him by his treating physician, Dr. Fernando. He indicated that he had stopped doing this work because his pain began to worsen. When asked whether he had ever volunteered before late 2001 to help Mr. Latin with any work at Frank's Auto Body, relator indicated that he had not.

{¶ 30} 9. The BWC moved the commission to declare an overpayment of TTD compensation for the period of December 17, 2001, through August 21, 2002, and living-maintenance compensation for October 21 through November 20, 2002, and to order that the amounts be collected pursuant to the fraud provisions of R.C. 4123.511(J).

{¶ 31} 10. The matter was heard before a district hearing officer ("DHO") on July 31, 2002, and resulted in an order denying the BWC's request to declare an overpayment for the period of December 17 through December 29, 2001, on the grounds that the BWC had failed to provide any proof that the payment that relator received on December 29, 2001, was for work performed during relator's disability. For the period of December 19, 2001, through January 24, 2002, the DHO declared an overpayment because relator had been assisting with cleaning and delivering cars during that time. For the period of January 25 through August 21, 2002, and October 21 through November 20, 2002, the DHO denied the BWC's request to declare an overpayment of TTD compensation and living-maintenance compensation on the grounds that the BWC had failed to demonstrate that relator received any compensation after January 24, 2002, and that the medical evidence on file demonstrated relator's ongoing disability. The DHO further denied the request for a finding of fraud on the grounds that the BWC had not sustained its burden of proof. The DHO found that relator had been on light-duty work restrictions, which the employer could not accommodate and that relator had testified that the work done for Frank's Auto Body for the relevant period did not extend beyond his light-duty restrictions.

{¶ 32} 11. The BWC appealed and the matter was heard before a staff hearing officer ("SHO") on September 20, 2003, and resulted in an order modifying the prior DHO order. The SHO declared an overpayment of TTD compensation for the entire period of December 17, 2001, through August 21, 2002, and concluded that it was a result of fraud. The SHO explained the rationale as follows:

The Staff Hearing Officer finds that claimant has been overpaid Temporary Total Disability Compensation for the period 12/17/2001 to 08/21/2002 ($21,-456.28) as claimant worked for a portion of this period and retained the ability to continue with such work activity but for his receipt of Temporary Total Disability Compensation. The Staff Hearing Officer further finds that claimant's receipt of Temporary Total Disability Compensation for the above noted period was the result of his fraud, in that he induced the BWC to incur 'damage' to itself by wrongfully paying claimant Temporary Total Disability Compensation to which he was not entitled. Claimant's knowingly false and material representations to the BWC caused the BWC to reasonably and justifiably rely on claimant's representations and make payment of Temporary Total Disability Compensation to claimant. Despite written warnings against the receipt of Temporary Total Disability Compensation (C–84s; disability checks; etc.) when working, claimant, nevertheless, knowingly withheld information from the BWC concerning his work activities and capabilities in order to wrongly obtain Temporary Total Disability Compensation. This overpayment shall be recouped pursuant to R.C. 4123.511(J).

Claimant testified at hearing as to his long-time friendship with Frank Latin, owner of Frank's Auto Body. Both claimant and Mr. Latin (per BWC S.I.U. interview summary document and statement of Frank Latin on file) acknowledged that claimant was a frequent visitor to the body shop and would on occasion perform various tasks around the shop (answer phones, run errands, etc.). Although claimant asserts that the work activity that he performed for Frank's Auto Body, in the year 2001, took place *before* his 12/14/2001 injury, the Staff Hearing Officer does not find this assertion to be plausible. The Staff Hearing Officer finds it highly unlikely that claimant, steadily employed prior to his 12/14/2001 injury, would suddenly inquire of Frank Latin as to the availability of work for pay immediately *before* his 12/14/2001 injury where claimant had performed various errands and visited the shop for years before the 12/14/2001 injury without ever asking to be compensated. The more probable scenario, and the one found persuasive by the Staff Hearing Officer, is that claimant sought out compensated work activity immediately *after* his 12/14/2001 injury, during the period of time in which he was without income from Radix Wire and had yet to begin to receive Temporary Total Disability Compensation from the BWC. The statement of Frank Latin (dated

01/17/2003) confirms this interpretation of the facts and the purpose of the payments of $288.00 (12/29/2001) and $280.00 (01/24/2002) to claimant from Frank's Auto Body. Significantly, the 01/17/2003 statement of Frank Latin states that, at the time of the two separate payments to claimant ($288.00 and $280.00), Mr. Latin "was not aware that he was on disability". The Staff Hearing Officer finds that such an acknowledgement would be unnecessary and irrelevant if the work activity being compensated took place *before* the 12/14/2001 injury and *before* claimant asserted that the injury had caused him to be disabled.

Claimant's representations on the various C–84s on file cite dates of last work as being either 12/14/2001, 12/17/2001 or 12/19/2001. These C–84s and claimant's assertions thereon extended through the period(s) during which he performed work activity for Frank's Auto Body and asserted that no work had been performed from at least 12/19/2001. These representations were material, were justifiably relied upon by the BWC, to its detriment in that improper compensation was paid, and were made by claimant with the intent that the BWC so rely.

While not within the specific Temporary Total Disability overpayment period alleged by the BWC (12/17/2001 to 08/21/2002), the 09/30/2002 office note of Dr. French, nevertheless is close enough in time to draw into question the nature and extent of the disability and physical capabilities asserted by claimant just weeks before. The 09/30/2002 note states that claimant presented to the office having done "a lot of lifting, pushing, pulling this weekend-helped do some roofing". A review of the Dictionary of Occupational Titles shows that there are no types of roofing that do not involve strenuous physical exertion. That claimant would be capable of engaging in such activity runs counter to the extended period of disability and limited physical capabilities alleged previously.

The Staff Hearing Officer finds insufficient evidence to warrant a finding of overpayment of Living Maintenance Compensation for the period 10/21/2002 to 11/20/2002. There is a lack of contemporaneous medical evidence for this period which demonstrates that payment of Living Maintenance Compensation was improper.

(Emphasis sic.)

{¶ 33} 12. Relator's appeal was refused by an order of the commission mailed on October 25, 2003.

{¶ 34} 13. Relator's request for reconsideration was denied by an order of the commission mailed on December 6, 2003.

{¶ 35} 14. Thereafter, relator filed the instant mandamus action in this court.

*Conclusions of Law:*

{¶ 36} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that he has a clear legal right to the relief sought and that the commission has a clear legal duty to provide that relief. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631. A clear legal right to a writ of mandamus exists when the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.* (1986), 26 Ohio St.3d 76, 26 OBR 66, 497 N.E.2d 70. On the other hand, when the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.* (1987), 29 Ohio St.3d 56, 29 OBR 438, 505 N.E.2d 962. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.* (1981), 68 Ohio St.2d 165, 22 O.O.3d 400, 429 N.E.2d 433.

{¶ 37} In the present case, relator contends that the commission abused its discretion by declaring an overpayment of TTD compensation and in finding fraud. Relator contends that the record is devoid of any evidence supporting the commission's declaration of an overpayment for the period of December 17, 2001, through December 29, 2001. Furthermore, relator contends that there is no evidence of fraud. For the following reasons, this magistrate disagrees.

{¶ 38} It is undisputed that questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *Teece.* Furthermore, the determination of disputed factual situations is within the final jurisdiction of the commission, subject to correction by an action in mandamus only upon a showing of an abuse of discretion. An abuse of discretion connotes not merely an error of judgment, but a perversity of will, passion, prejudice, partiality or moral delinquency found only where there exists no evidence upon which the commission could have based its decision. *State ex rel. Allied Wheel Products, Inc. v. Indus. Comm.* (1956), 166 Ohio St. 47, 1 O.O.2d 190, 139 N.E.2d 41, and *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster* (1986), 22 Ohio St.3d 191, 22 OBR 275, 489 N.E.2d 288.

{¶ 39} In the present case, the commission determined that relator and his high school friend, Mr. Latin, were not credible witnesses. Specifically, the commission noted that the evidence indicated that relator had spent time at Frank's Auto Body, Mr. Latin's shop, since 1989, and yet it was not until late 2001 that relator inquired of Mr. Latin whether he had some work that relator could perform. Although relator stated that he had inquired about paid work and

had completed the work *before* his date of injury, the SHO concluded that relator more likely had inquired of Mr. Latin whether he had some work relator could perform *after* relator had been injured at work and was not drawing any compensation. Based upon the commission's determination that neither relator nor Mr. Latin were credible witnesses, the commission determined that relator had worked during the period when he was receiving TTD compensation and declared the entire period to be an overpayment because the commission determined that building a room most likely consisted of activity outside of the restrictions imposed upon him by his treating physician, Dr. Fernando. It is not an abuse of discretion for the commission to listen to testimony and determine that witnesses are not credible. For this court to find an abuse of discretion in the present case, the court would have to reweigh the evidence and redetermine the credibility of that evidence. That is not the province of this court.

{¶ 40} Relator argues that the DHO made the correct decision by finding an overpayment only for the period of December 19, 2001, through January 24, 2002, the period that relator admitted he had helped out with cleaning and delivering cars. Relator contends that there is no evidence that he worked for the period of December 17 through December 29, 2001, outside his restrictions. However, after finding the testimony of relator and Mr. Latin not persuasive, the SHO looked at the facts that (1) a room had been built, (2) the check was dated December 29, 2001, (3) it was unlikely that, after years of hanging out at the shop, relator inquired about paid work immediately before his injury, (4) that relator initially lied to investigators, (5) and building a room would require more effort than light-duty work. This is "some evidence."

{¶ 41} As to the period of January 24 through August 21, 2002, this period also turns on credibility. The SHO concluded that relator had been working at an activity outside his restrictions and found that the medical evidence submitted in support of this period certifying TTD compensation was not credible.

{¶ 42} Furthermore, with regard to the commission's determination of fraud, having found relator not to be credible, the commission did not abuse its discretion in finding fraud. The commission specifically found that relator had worked during a time that he was not permitted to work, that he had endorsed the BWC checks in spite of the notation that he was certifying that he had not worked during the period in question, and that he had attempted to conceal his work activities when the BWC investigators first questioned him. Again, the magistrate cannot find that this determination constituted an abuse of discretion, as the commission heard relator's testimony and determined that he was not a credible witness.

{¶ 43} Based on the foregoing, it is this magistrate's decision that relator has not proven that the commission abused its discretion in declaring an overpayment for the period of December 17, 2001, through August 21, 2002, and finding that fraud was involved. As such, this court should deny relator's request for a writ of mandamus.