LAMB et al., Appellants,

v.

WASHINGTON TOWNSHIP BOARD OF ZONING APPEALS, Appellee.

[Cite as *Lamb v. Washington Twp. Bd. of Zoning Appeals,*
172 Ohio App.3d 751, 2007-Ohio-4101.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22145.

Decided Aug. 10, 2007.

William H. Lamb, for appellants.

Robert J. Surdyk, for appellee.

DONOVAN, Judge.

{¶ 1} This matter is before the court on the notice of appeal of William H. Lamb and Mara V. Lamb, filed April 23, 2007. On December 14, 2005, the Lambs appealed a decision of the Washington Township Board of Zoning Appeals to the Montgomery County Court of Common Pleas, and the court affirmed the board's decision on April 3, 2007. The board had affirmed the decision of the Washington Township zoning inspector that the Lambs' use of their home as a "nutrition therapy clinic" was not permitted under the Washington Township Zoning Resolution. The zoning inspector determined that Mara was not "legally permitted to operate her nutritionist business from [her] residence since she is required by state law to have a license to be a nutritionist." Mara is both a licensed dietician and a certified diabetes educator, and she advertised herself in the Yellow Pages as a dietician and listed her home address and phone number. Two members of the board voted to uphold the inspector's decision, two members voted to overturn it, and one member did not vote; the resolution requires that three of the five members of the board vote against the inspector before his decision can be overturned.

{¶ 2} The resolution defines home occupation as follows:

{¶ 3} "Home Occupation

{¶ 4} "Any occupation conducted in its entirety within a dwelling unit, provided that no person other than members of the family residing on the premises shall be engaged in such occupation and the use of the dwelling unit for the home occupation shall be clearly incidental and subordinate to use for residential purpose by its occupants, provided that:

{¶ 5} "A. Said occupation does not require a state or local license and/or inspection.

{¶ 6} "B. It does not occupy more than two hundred (200) square feet or floor area within the dwelling unit and does not require alteration of the structure.

{¶ 7} "C. There are no displays that will indicate from the exterior that the premises are being used for a non-residential purpose.

{¶ 8} "D. The only mechanical equipment installed or used is that which is normally used for domestic or household purposes."

{¶ 9} The trial court noted that while the Lambs asserted ten assignments of error, "only assignments of error two, three and eight are relevant to determining whether the [board's] decision was proper * * * albeit all were reviewed by the court." The court noted that it reviewed the evidence submitted by the Lambs and the zoning inspector as well as testimony from the Lambs' neighbors, and concluded that the board's "decision was supported by a preponderance of substantial, reliable, and probative evidence." The court also determined that the board "decided that the purpose behind the zoning ordinance was to limit traffic in residential areas." The court concluded that "this is a legitimate and rational reason behind the zoning ordinance."

{¶ 10} The Lambs assert six assignments of error. We will address the Lambs' sixth assignment of error first, as doing so renders analysis of the remaining assignments of error moot. It is as follows: "The court of common pleas' decision was unreasonable, arbitrary and unconscionable in that it upheld the zoning board's decision which decision was unsupported by any evidence, much less by a preponderance of substantial, reliable, and probative evidence on the whole record, and it was an abuse of discretion of the court of common pleas to affirm the board's decision on a basis not stated in the record."

{¶ 11} We first note that in analyzing an administrative appeal, the common pleas court "may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code." R.C. 2506.04. The common pleas court "must weigh the evidence in the record." *Dudukovich v. Lorain Metro. Housing Auth.* (1979), 58 Ohio St.2d 202, 12 O.O.3d 198, 389 N.E.2d 1113. "R.C. 2506.04 requires the court to examine the 'substantial, reliable and probative evidence on the whole record,' which in turn necessitates both factual and legal determinations." *Id.*

{¶ 12} In deciding whether the court correctly applied the standard of review prescribed by R.C. 2506.04, we "have a limited function" to review the common pleas court's judgment only on questions of law. *Id.* An appellate court "is to determine only if the trial court has abused its discretion. An abuse of

discretion ' * * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster* (1986), 22 Ohio St.3d 191, 193, 22 OBR 275, 277, 489 N.E.2d 288, 290. Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264.

{¶ 13} The Lambs argued to the court that the board's decision was "arbitrary and capricious and unsupported by a preponderance of substantial evidence because there was no evidence that appellant was using the property in any way that required a state or local license." We agree that the conclusion of the board is not supported by substantive, probative, and reliable evidence.

{¶ 14} Jack Kuntz, the zoning inspector, testified before the board that the resolution permits home occupations as accessory uses in the single-family-residential district where the Lambs reside, and he determined that Mara's use of her home "did not fit into the definition of a home occupation." According to Kuntz, to "be a dietician requires a state license, which is a violation of what the definition states." He stated that Mara did not have any employees working in her home, that she did not use more than 200 square feet of her home as an office, and that the Lambs did not modify the exterior of their home to accommodate Mara's office. Kuntz stated that the Lambs did add an additional driveway to the property. He further testified that there was no signage at the property.

{¶ 15} Bill Lamb testified that Mara in some weeks sees no clients at their home and in other weeks she may see one or two. According to Bill, Mara "does that as a service and a convenience to the patients; some of whom live near where we live, some who don't want to go to a doctor's office, and there may be other reasons. * * * [S]he does have other offices to go to. She does see other patients. She has an extensive practice elsewhere."

{¶ 16} Mara testified that she is a registered licensed dietician, that she has a master of science degree in nutrition and a bachelor's degree in dietetics, and that she is also a certified diabetes educator. She stated that she does "many things," including consulting at "facilities for the mentally retarded, for the mentally ill, for assisted care, [and] for nursing homes." She does "nutritional assessments" on her computer at home and at the facilities. She conducts "wellness programs for a number of organizations; for example, Trotwood Fire Department, the VA Hospital, Dining with Diabetes, and so on." She is "a lecturer" and a "full professor," and she authors educational materials. Mara counsels patients, and she stated that 90 percent of her patients are diabetics. Mara stated, "I see them not as a dietician, but as a certified diabetes educator."

{¶ 17} Mara further stated as follows: "I have 4 offices. I work with Doctor Westbrock on his weight control program. I see his patients there. I work with Doctor Hughes, who is a radiologist. I see his cancer patients in his office. I work with Doctor Sarwal. I have an office in his office. I am his certified diabetes educator. I work with Doctor Pelfrey. * * * She has an osteoporosis clinic and has asked me to help her patients there. I see patients at various facilities. I am a nutritionist with the Montgomery County Combined Health District. I make home visits. I am also with the Visiting Physicians Association and make home visits.

{¶ 18} "The reason that I meet the criteria for a home occupation is that I am a certified diabetes educator, and I see patients occasionally in my home office just for a convenience, but never more than 4, and I generally try to get them to see me elsewhere. I make a lot of home visits too. I work with a lot of patients who are just not able to get around. * * *

{¶ 19} "When I do my consulting, I am a dietician, but I do it on the computer. I go to the facilities. When I see diabetics, I am a certified diabetes educator."

{¶ 20} Mara also spoke of the driveway that she and Bill added to their property as follows: "Why did we put a driveway in there? Because Bill's mother did not want to go into a nursing home. She was kicking and screaming. And I said, okay, she can come and live with us. We will put a driveway in. She walks with a walker."

{¶ 21} Regarding her Yellow Pages advertisement, Mara stated, "The reason I have my home address and home occupation the same is that I have so many places that I consult for and that I do work. It's convenient to have one mailing address. * * * It's because I have to have a mailing address."

{¶ 22} Finally, Mara stated that she spends 50 percent of her time working outside of her home, and that the majority of her time spent at home involves computer work, "reading, writing, faxing."

{¶ 23} The following neighbors of the Lambs also testified at the hearing: Mark Bidwell, Leslie Kiefaber, Carol Williams, Angie Bidwell, Mary Rose Pica, Liam Harper, and Fred Husted. Each of them expressed their concerns about a business being operated in their residential neighborhood and the resulting potential for an increase in traffic.

{¶ 24} While the court of common pleas concluded that the board's decision was supported by a preponderance of substantial, reliable, and probative evidence, the court did not point to the evidence upon which it relied. The zoning inspector stated that except for the fact that Mara is a licensed dietician, her home occupation complies with the resolution. The evidence established, however, that when Mara sees clients at her residence, she works as a diabetes

educator, and she does not need a state or local license to do so. The resolution does not prohibit such an accessory use of the Lambs' residence. The Lambs' neighbors' concern about a potential increase in traffic in their neighborhood is not evidence that Mara's home occupation violates the resolution. There being an abuse of discretion, the judgment of the court of common pleas is reversed and the matter is remanded.

Judgment reversed<br/>and cause remanded.

BROGAN and FAIN, JJ., concur.